IN THE UTAH COURT OF APPEALS

----ooOoo----

<table>
<tr><td>State of Utah,</td><td>)</td><td>AMENDED MEMORANDUM</td></tr>
<tr><td></td><td>)</td><td>DECISION[1]</td></tr>
<tr><td>Plaintiff and Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>Case No. 20100450-CA</td></tr>
<tr><td>v.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>F I L E D</td></tr>
<tr><td>Richard Paul Franco,</td><td>)</td><td>(July 19, 2012)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant and Appellant.</td><td>)</td><td>2012 UT App 200</td></tr>
</table>

-----

Third District, Salt Lake Department, 081906101
The Honorable Ann Boyden

Attorneys:     Ronald Fujino, Salt Lake City, for Appellant
               Mark L. Shurtleff and Andrew F. Peterson, Salt Lake City, for Appellee

-----

Before Judges McHugh, Orme, and Roth.

ROTH, Judge:

¶1     Richard Paul Franco makes two challenges to his conviction for forcible sexual abuse.  First, he contends that the trial court committed reversible error requiring remand when it did not inquire into the need for substitution of counsel after Franco expressed dissatisfaction with his attorney's performance.  Franco also claims that trial counsel's failure to present Franco's desired theory of the case resulted in ineffective assistance of counsel entitling him to a new trial.  We affirm.

I.  Duty to Inquire

¶2     Franco asserts that the trial court had a duty to inquire about the need for substitute counsel once he complained in posttrial letters to the court about a conflict of interest with his attorney.  *See generally State v. Pursifell*, 746 P.2d 270, 273 (Utah Ct. App.1987) ("[W]hen dissatisfaction is expressed, the court must make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints and to

_____

1. This Amended Memorandum Decision replaces the Memorandum Decision in Case No. 20100450-CA issued on May 24, 2012.  Paragraph 5 has been revised.

apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated."). In particular, Franco contends that the court failed to address his complaint that

> [trial counsel] didn't act accordingly in my trial by not stating [to the jury] what I said to him during my trial in his ear [regarding my theory of the case]. [Trial counsel and I] have a conflict of interest . . . he has minimized or put my life freedom(s) in je[opa]rdy opposite of what I required him to do[.] I want a new la[wy]er.

¶3    According to Franco, the trial court's failure to conduct an inquiry into the substance of his complaints requires us to remand the issue for a determination of whether good cause existed for substitution of counsel. In support of his position, Franco directs us to *State v. Vessey*, 967 P.2d 960 (Utah Ct. App. 1998), in which the defendant filed a pro se motion with the trial court three months before trial, requesting the appointment of new counsel because his existing counsel "refused to prepare for trial and . . . they had irreconcilable conflicts." *Id.* at 961-62. The trial court "summarily denied [the] defendant's motion for substitution of counsel, [and] the case proceeded to trial, [where he] was convicted." *Id.* at 961. We reversed, stating that "[b]y summarily denying defendant's motion [for substitution] . . . , the trial court put the defendant in the position of choosing between proceeding to trial with counsel . . . or proceeding pro se." *Id.* at 964. Relying on our earlier decision in *State v. Pursifell*, 746 P.2d 270 (Utah Ct. App. 1987), we observed that the better practice was to require the trial court to conduct an inquiry into the basis for complaints about counsel's performance before trial. *See* 967 P.2d at 962-64. Such a pretrial inquiry best safeguards a defendant's Sixth Amendment right to counsel and promotes judicial efficiency by allowing a court to consider whether there is an irreconcilable conflict or breakdown in communication that necessitates substitution of counsel *before* a trial has occurred. *See id.* (noting that the inquiry requirement creates an "incentive . . . for a trial court to conduct the appropriate review in a timely manner," which is critical because "timely judicial intervention at the pretrial stage constitutes an effective mechanism for prevention of Sixth Amendment deprivations and for the simultaneous preservation of the integrity of the adversary trial process" (internal quotation marks omitted)); *Pursifell*, 746 P.2d at 274 ("When a defendant is forced to stand trial with the assistance of an attorney with whom he has become embroiled in an irreconcilable conflict, he is deprived of the effective assistance of any counsel whatsoever and his Sixth Amendment right to counsel is violated." (internal quotation marks omitted)). Furthermore, a pretrial inquiry "reduces the likelihood of a post conviction ineffective assistance claim" and "creates a record that reviewing courts can rely upon when an ineffectiveness issue is raised on appeal." *Vessey*, 967 P.2d at 964.

¶4 The situation in *Vessey*, however, is different from Franco's. Unlike the defendant in *Vessey*, Franco did not alert the trial court to any concerns about his counsel's representation prior to trial. *See id.* at 961-62 (reviewing a failure to inquire where the court was notified of the defendant's complaint three months before trial); *see also Pursifell*, 746 P.2d at 272 (reviewing the defendant's claim that the trial court failed to adequately inquire where "[o]n the morning of the first day of trial, the defendant informed the court that he did not want to proceed with . . . counsel"). Indeed, it was not until five months after his July 2009 trial and conviction, on December 24, 2009, that Franco first sent a letter to the court expressing dissatisfaction with trial counsel's performance at trial. Between Franco's December 24 letter and his sentencing on May 3, 2010, Franco sent the court seven more letters, all expressing nearly identical complaints about counsel's presentation of the case at trial.

¶5 Franco nevertheless contends that the remedy established by *Vessey*-- remand to the trial court for consideration of whether there had been an actual pretrial conflict between counsel and the defendant requiring substitution--should apply under the circumstances presented in this case. *See Vessey*, 967 P.2d at 964. The remedy of remand was adopted in *Vessey*, however, because "timely judicial intervention at the pretrial stage constitutes an effective mechanism for the prevention of Sixth Amendment deprivations and for the simultaneous preservation of the integrity of the adversary trial process." *Id.* (internal quotation marks omitted). Treating the failure to inquire pretrial as per se error creates an "incentive . . . for a trial court to conduct the appropriate review in a timely manner." *Id.* The remedy of remand does not have the same prophylactic effect in cases such as this, where the complaint is made after the fact and any prejudicial impact on the trial has already occurred.[2] When a defendant's complaints about counsel's trial performance are disclosed after the trial has ended, his or her remedy lies in an appeal challenging the effectiveness of counsel's assistance. *Cf. Pursifell*, 746 P.2d at 275 ("Unsuccessful motions for substitution of counsel are typically followed by the claim that defendant received ineffective assistance of counsel at trial."). Franco has done so here as an alternative argument on appeal. For these reasons, we find the *Vessey* rule inapplicable to this case and decline to remand for a posttrial inquiry into whether there was good cause to substitute appointed counsel.[3]

---

2. While Franco expressed dissatisfaction with counsel several months prior to sentencing, he does not challenge on appeal counsel's performance at sentencing.

3. While a posttrial failure to inquire does not justify remand, there are significant benefits to be gained from a trial court's inquiry into the basis for a posttrial complaint about inadequate representation at trial. For instance, considering the claim may

(continued...)

II. Ineffective Assistance of Counsel

¶6    We now turn to Franco's claim of ineffective assistance of counsel.[4]  A claim of ineffective assistance at trial "presents a question of law, which we review for correctness." *State v. Walker*, 2010 UT App 157, ¶ 13, 235 P.3d 766.  To prevail on an ineffectiveness claim, a defendant must show both "(1) that counsel's performance was

---

3. (...continued)
contribute to judicial economy to the extent that the trial court may be able to address or resolve a defendant's concerns, thus reducing the likelihood of an appeal based on ineffective assistance of counsel.  In addition, such an inquiry may provide a helpful record in the event of such an appeal.

4. Franco first raised the ineffective assistance claim in the trial court through complaints in his letters, and accordingly, the judge made some effort to address Franco's concerns.  At sentencing, the trial judge indicated that she had read Franco's letters but did not believe that counsel had been ineffective.  The judge explained,

> You haven't raised [ineffective assistance] today.  I have been carefully watching the representation that has occurred and have addressed my concerns with extensive competency evaluations, and I am finding on the record that everything that I have observed in [c]ourt is consistent with [trial counsel] trying to do everything he can in dealing with you.  And when there have been some concerns, they have been raised through the competency process which has addressed the concerns that we have about whether or not [counsel] has been following your directions or if you've been able to fully communicate with him.  Those sort of concerns I have chosen to address with the competency evaluations, and the doctors have told me that their opinion is . . . that you are able to communicate sufficiently . . . .

The judge did not further elaborate on the basis for her conclusions that there had not been a breakdown in communication and that counsel had generally provided effective assistance.  Nevertheless, the parties agree that this court has "everything in the record necessary to review [Franco's] complaints regarding trial counsel's effectiveness" and that remand under rule 23B of the Utah Rules of Appellate Procedure is unnecessary to aid our decisionmaking on appeal.  *See generally* Utah Rule App. P. 23B (allowing for remand to the trial court to make additional findings as necessary for a determination of a claim of ineffective assistance of counsel).

20100450-CA                          4

objectively deficient, and (2) [that] a reasonable probability exists that but for the deficient conduct defendant would have obtained a more favorable outcome at trial." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

¶7      Under the deficient performance prong, Franco must show that his "'counsel's representation fell below an objective standard of reasonableness.'" *Nicholls v. State*, 2009 UT 12, ¶ 37, 203 P.3d 976 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). "'This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). To make such a showing, a defendant "must overcome the strong presumption that [his] trial counsel rendered adequate assistance, by persuading the court that there was no conceivable tactical basis for counsel's actions." *Clark*, 2004 UT 25, ¶ 6 (alteration in original) (emphasis, citation, and internal quotation marks omitted). Moreover, appellate courts will not "second-guess trial counsel's legitimate strategic choices." *State v. Mahi*, 2005 UT App 494, ¶ 20, 125 P.3d 103 (internal quotation marks omitted); *see also State v. Tennyson*, 850 P.2d 461, 468 (Utah Ct. App. 1993) (stating that to reject an ineffective assistance claim, "we need only articulate some plausible strategic explanation for counsel's behavior"). "Decisions as to what witnesses to call, what objections to make, and by and large, what defenses to interpose, are generally left to the professional judgment of counsel." *State v. Wood*, 648 P.2d 71, 91 (Utah 1982). Thus, Franco "must identify counsel's specific acts or omissions that 'fall outside the wide range of professionally competent assistance.'" *State v. Classon*, 935 P.2d 524, 532 (Utah Ct. App. 1997) (quoting *State v. Frame*, 723 P.2d 401, 405 (Utah 1986)).

¶8      In this regard, ineffectiveness cannot be established simply by the fact that the attorney chose not to follow the trial advice of the defendant he represented. To the contrary, the Sixth Amendment right to counsel is based on the common-sense notion that those accused of a crime are at a distinct disadvantage in planning and carrying out an effective defense, one that requires navigating a path through a complex landscape of laws, rules, and evidence where the stakes are very high. The concept of effective assistance must therefore contemplate the primacy of counsel's judgment, based on education, training, and experience, over that of his client. *See Wood*, 648 P.2d at 91 ("Trial tactics lie within the prerogative of counsel and may not be dictated by his [or her] client. Decisions as to what witnesses to call, what objections to make, and by and large, what defenses to interpose, are generally left to the professional judgment of counsel."). And therefore a claim that counsel's performance was deficient cannot be based on a decision not to follow his client's instructions; rather, a defendant must still establish that his "'counsel's representation fell below an objective standard of reasonableness.'" *Nicholls*, 2009 UT 12, ¶ 37 (quoting *Strickland*, 466 U.S. at 688). *See*

*generally State v. Pursifell*, 746 P.2d 270, 272 (Utah Ct. App. 1987) ("While an indigent defendant has a right to have counsel appointed to represent him, he does not have a constitutional right to a lawyer other than the one appointed, absent good cause." (citation omitted)).

¶9    Franco has failed to meet this burden.  Franco claims that trial counsel was deficient because he did not present Franco's own theory of the case to the jury. According to Franco's theory, the victim fabricated the allegations of sexual abuse after her attempt to extort money from him by threatening to send him back to prison failed. Franco, however, has not identified any evidence, other than his own testimony, that he may have presented to support this theory.  At trial, Franco chose not to take the stand, and he does not assert that he was precluded from doing so.  Even if his counsel had advised Franco not to testify at trial, something he does not allege, such advice would have reflected a reasonable trial strategy, given that Franco's taking the stand involved a substantial risk of the State impeaching him with evidence of prior convictions.  *See State v. Gilbert*, 2005 UT App 432U, para. 3 (mem.) ("[F]ailure to testify could be considered sound trial strategy because by not testifying, [the defendant] was shielded under Utah Rule of Evidence 609 from the possibility of prejudicial impeachment with his prior convictions.").

¶10    Absent Franco's testimony or other relevant evidence, trial counsel could have developed Franco's extortion theory only through cross-examination of the victim. Franco has not overcome the presumption that counsel's decision not to raise the extortion theory--a "blame the victim" approach that carried the risk of provoking juror antipathy toward Franco--was sound trial strategy.  *See generally Classon*, 935 P.2d at 532 ("[A] defendant must overcome our presumption that, when viewing the circumstances of the case as of the time of counsel's conduct, counsel's challenged action or omission was sound trial strategy.").  Franco's counsel instead took a more context-based and less risky approach to undercutting the weight of the victim's testimony by questioning her about the poor lighting in the bedroom that might have impeded her ability to identify Franco as her assailant, her proximity to others in the house who might have been alerted to her plight had she made any noise, and her delay in seeking help, a line of questioning that focused strongly on circumstances suggesting the victim's lack of credibility, rather than accusing her of extortion.  A decision by counsel that reasonably weighs the risks and benefits of available strategic approaches before choosing one as preferable to others cannot support a claim that counsel was deficient in either strategy or performance, even if the approach did not lead to the desired result.  *See State v. Ott*, 2010 UT 1, ¶ 34, 247 P.3d 344 ("[W]henever there is a legitimate exercise of professional judgment in the choice of trial strategy, the fact that it did not produce the expected result does not constitute ineffectiveness of counsel.").  And failure to establish deficient

performance defeats a claim for ineffective assistance of counsel.  *See State v. Welborn*, 2012 UT App 5, ¶ 5, 268 P.3d 881 ("A defendant has not established ineffective assistance if he fails to demonstrate that both elements have been met.").

¶11    Accordingly, Franco's conviction is affirmed.


_____
Stephen L. Roth, Judge


-----

¶12    WE CONCUR:


_____
Carolyn B. McHugh,
Presiding Judge


_____
Gregory K. Orme, Judge