IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100477-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (August 16, 2012) |
| Richard L. Moore, | ) | |
| | ) | 2012 UT App 227 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 091901946
The Honorable Judith S.H. Atherton

Attorneys:     Samuel P. Newton, Kalispell, Montana, for Appellant
               Mark L. Shurtleff and Christine F. Soltis, Salt Lake City, for Appellee

-----

Before Judges McHugh, Voros, and Roth.

ROTH, Judge:

¶1     Richard L. Moore appeals from his conviction for sexual abuse of a child, a
second degree felony, *see* Utah Code Ann. § 76-5-404.1(2)-(3) (2008).[1]  Moore argues that
the trial court plainly erred in admitting out-of-court statements that he claims were

---

1.  We cite the current versions of the Utah Code and the Utah Rules of Evidence
because the relevant statute has not been amended, *see* Utah Code Ann. § 76-5-404.1
amend. notes (2008), and the changes to the relevant rules are "intended to be stylistic
only," *see* Utah R. Evid. 104, 2011 advisory committee's note; *id.* R. 801, 2011 advisory
committee's note.

hearsay and that trial counsel was ineffective because counsel failed to object to the admission of that hearsay evidence. Moore also contends that there was insufficient evidence to convict him. We affirm.

¶2    "On appeal, we recite the facts in the light most favorable to the jury's verdict." *State v. Burk*, 839 P.2d 880, 882 (Utah Ct. App. 1992). Moore was convicted of sexually abusing the eight-year-old daughter (Child) of his ex-girlfriend (Mother). The abuse occurred while Mother and her children were visiting Moore, who remained a close friend of the family even after he and Mother were no longer romantically involved. During their visit to Moore's home, Moore invited the family to watch a DVD in his living room. While Child was sitting on Moore's lap, Moore "slipped" his hand under Child's skirt through the leg band of her underwear and "touched [her] vagina." Child did not immediately react to the touching.

¶3    After they returned home that night, however, Child told her sister (Sister), "I need to tell you something." According to Sister, Child started crying as she told Sister that Moore touched her "'"really, really bad"'" on her "'pee-pee.'"[2] Sister then told Child to "'tell Mom.'" While Child did tell Mother that Moore touched her vagina inside of her underwear, when she did so was disputed. Child recalled telling her the night of the incident, but Mother thought it was about a month later. Prior to trial, the State moved to have Child's statements to Sister and Mother admitted. Moore's attorney represented that he "was not going to object to that information."

### I. Hearsay

¶4    Moore now contends that the trial court committed plain error in admitting Child's out-of-court statements to Sister and Mother and that his counsel was ineffective for failing to object to admission of Child's statements to Sister and Mother because those statements constituted inadmissible hearsay.

---

2. Sister's account of the events came into evidence through the testimony of Detective James Artis, an officer employed with the special victims unit of the Salt Lake City Police Department, after Sister was unable to recall at trial any of the details of Child's report to her that Moore inappropriately touched Child. In a footnote in his brief, Moore asserts that both Child's statement to Sister and Sister's statement to Detective Artis constitute hearsay. While Moore has identified a potential double hearsay issue, he does not further analyze this issue, and accordingly, we will not consider it.

¶5    To establish plain error, the defendant must demonstrate that an error occurred, the error was or should have been obvious, and the error was prejudicial. *See State v. Casey*, 2003 UT 55, ¶ 41, 82 P.3d 1106. With respect to his plain error claim, Moore argues that the trial court failed to determine whether Child's out-of-court statements were reliable before allowing them to be presented to the jury. According to Moore, trial courts have an independent obligation to assess the reliability of a child-victim's out-of-court statements in sexual abuse cases prior to admitting them. In support of his position, Moore relies on cases applying Utah Code section 76-5-411, which required a judge to make findings that the "interest of justice" would be served by allowing a child-victim's out-of-court statements to be admitted, *see State v. Nelson*, 725 P.2d 1353, 1355 n.3 (Utah 1986) (requiring the court to make an in-depth evaluation of the proposed evidence under the factors identified in section 76-5-411); *see also State v. Matsamas*, 808 P.2d 1048, 1051 (Utah 1991) (placing special emphasis on the reliability of the out-of-court statements from the child), and rule 15.5 of the Utah Rules of Criminal Procedure, which governs admission of recordings of out-of-court statements of a child-witness. Section 76-5-411, however, was repealed in 2009 and was no longer in effect by the time of the March 2010 trial. *See generally* Utah Code Ann. § 76-5-411 repeals (Supp. 2012). Furthermore, we are not persuaded that rule 15.5 is applicable under these circumstances—rule 15.5 applies to the admission of *recordings* of out-of-court statements, whereas this case involved live testimony from Child, Sister, and Mother. *See* Utah R. Crim. P. 15.5. Because Moore has failed to explain how case law applying section 76-5-411 and rule 15.5 extends to this situation where neither appear to be applicable, he has not established any obvious error by the trial court. *See generally Casey*, 2003 UT 55, ¶ 41 (explaining that if a defendant fails to show an obvious error, his plain error claim fails). Moreover, in the trial court, defense counsel expressly stated that he would not object to the admission of Child's out-of-court statements. Such a concession results in invited error, which precludes plain error review in any event. *See State v. Hall*, 946 P.2d 712, 716 (Utah Ct. App. 1997) (stating that Utah appellate courts will decline to consider a claim of plain error if defense counsel made a "'conscious decision to refrain from objecting'" or "'led the trial court into error'" (quoting *State v. Bullock*, 791 P.2d 155, 158 (Utah 1989))).

¶6    Moore also challenges the admission of the out-of-court statements under the doctrine of ineffective assistance of counsel.

> To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness and

(2) counsel's performance was prejudicial in that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. Maestas,* 2012 UT App 53, ¶ 57, 272 P.3d 769 (internal quotation marks omitted). An ineffective assistance of counsel claim will fail if a "conceivable legitimate tactic or strategy can be surmised from counsel's actions." *State v. Tennyson*, 850 P.2d 461, 468 (Utah Ct. App. 1993). There is a strong presumption that trial counsel was competent and effective. *See Benvenuto v. State*, 2007 UT 53, ¶ 19, 165 P.3d 1195.

¶7 In its brief, the State has posited a "conceivable legitimate" strategic basis for defense counsel's decision not to object to the admission of the statements. *See generally Tennyson*, 850 P.2d at 468. At trial, Moore presented a theory that Mother induced Child to fabricate the allegation that he touched Child's vagina in retaliation for his refusing to help Mother move to a new residence. He explained that while Child was sitting in his lap, her skirt bunched up and he realized his hand was resting on her bare thigh. Child pulled her skirt down, and Moore immediately removed his hand. It is this accidental touch that he claims was woven into a false allegation that he touched Child's vagina after Mother became angry that he had refused to help her move.

¶8 In furtherance of the fabrication defense, defense counsel elicited, during cross-examination, Child's prior statements to Sister and Mother to highlight that Child had described the touch as occurring not only on her vagina but also over her underwear and on her inner thigh. Defense counsel attempted to use these inconsistencies to undercut Child's credibility and strengthen the defense's theory that her story was a fabrication and that Moore's claim that he accidentally touched Child's thigh was more consistent with the facts. In so doing, defense counsel necessarily balanced the risk of allowing admission of Child's statements at trial against the chance that inconsistencies in those statements would help Moore's case. *See generally State v. Franco*, 2012 UT App 200, ¶ 10 (noting that trial counsel's performance cannot be deemed deficient based simply on the fact that, after diligently weighing the relative risks and benefits of the available strategic approaches, defense counsel chose a strategy that was ultimately unsuccessful); *cf. State v. Clark*, 2004 UT 25, ¶ 7, 89 P.3d 162 (attributing defense counsel's decision not to object to witness testimony that may have been inadmissible opinion testimony to a "reasonable tactical choice" because it gave him "considerable leverage in discrediting that testimony during cross-examination"). It is not appropriate for an appellate court, in hindsight, to second guess the strategy of defense

counsel. *See Franco*, 2012 UT App 200, ¶ 7; *State v. Charles*, 2011 UT App 291, ¶ 29, 263 P.3d 469. Because undercutting the credibility of witnesses and strengthening a defense theory are legitimate tactics, defense counsel's decision not to object to the prior statements was not deficient.

¶9      Further, it is not apparent that Child's statements to Sister and Mother were in fact inadmissible, in which case trial counsel's performance cannot be deemed ineffective. *See Maestas*, 2012 UT App 53, ¶ 57 (treating counsel's performance as deficient if it "fell below an objective standard of reasonableness" (internal quotation marks omitted)); *id.* (defining prejudice as "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different" (internal quotation marks omitted)).

> A statement . . . is not hearsay[ if] . . . [t]he declarant testifies [at trial] and is subject to cross-examination about a prior statement, and the statement . . . is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying . . . .

Utah R. Evid. 801(d)(1)(B). Prior consistent statements may be admitted, however, "'only when those statements were made before the charged recent fabrication.'" *State v. Bujan*, 2008 UT 47, ¶ 8, 190 P.3d 1255 (quoting *Tome v. United States*, 513 U.S. 150, 167 (1995)).

¶10     Moore claimed that the allegation that he touched Child's vagina arose one week after he refused to help Mother move, and Moore invited the jury to infer that Child's accusation was generated as a result of Mother's resulting anger. On appeal, Moore contends that Child's report to Sister occurred after the motive to fabricate because Sister did not tell Detective Artis about the report until nine months after the touching. Although Sister did not relay this information to the detective until months later, she informed him that Child had told her about the sexual abuse the night of their visit to Moore's house, which was before the claimed motive to fabricate arose. Thus, Child's statement to Sister was likely admissible as nonhearsay under rule 801(d)(1)(B) of the Utah Rules of Evidence as a prior consistent statement, and objection to its admission on the basis that it was hearsay would have been futile. *See generally State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective

assistance of counsel[ because the d]efendant could not have been prejudiced by properly admitted testimony." (citations omitted)).

¶11     Regarding Child's report to Mother, Child testified that she told Mother about the touching on the night it occurred.  Mother testified, however, that Child told her approximately one month after it happened.  Moore testified that the alleged motive to fabricate—his refusal to help Mother move—occurred approximately three to four weeks after the incident.  The evidence therefore is both conflicting, because Child's and Mother's testimonies about the timing of Child's disclosure differ, and equivocal, because there is not enough information in the record about the timing of the refusal to help Mother move and the timing of Child's disclosure to Mother to determine when the two events occurred in relation to each other.  Thus, it cannot be determined on the state of the record before us whether Child reported to Mother that Moore touched her vagina prior to the occurrence of the motive to fabricate or afterward.  Yet Moore's position on appeal assumes the testimony unequivocally places the time of Child's report to Mother after the motive to fabricate arose.  Normally, this type of fact-intensive admissibility question is resolved in the trial court, for example, under rule 104 of the Utah Rules of Evidence.  *See generally* Utah R. Evid. 104(a)–(b) (requiring preliminary questions concerning witness qualification or admissibility of evidence to be determined by the court, but if the question is dependent on the existence of a fact, then allowing the court to admit it on the condition that evidence of that fact is introduced).  But because Moore's trial counsel did not object to the admission of Child's statements to Mother, the issue was never presented to the trial court.

¶12     Resolution of this question is not necessary to our decision, however, because even if Child's statements to Mother were inadmissible hearsay, they were cumulative, and their admission thus appears to have been harmless under all the circumstances. Detective Artis testified that Sister told him that Child had said that Moore "'touched her "really, really bad"'" on "'her *pee-pee*,'" while Mother reported that Child told her that Moore "touched her bad" and explained that he had "put his hands inside of her panties."  Thus, Mother's recounting of Child's statement to her did not appear to add anything of substance to what Child reported to Sister or to what Child herself testified to, and any error in admitting it was not prejudicial.[3]  *See generally State v. Evans*, 2001

_____

3. The State also contends that Child's out-of-court statements to Sister and Mother could have come in as excited utterances or as nonhearsay offered solely to explain why

(continued...)

UT 22, ¶ 20, 20 P.3d 888 ("Harmless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings."); *State v. Maestas*, 2012 UT App 53, ¶ 57, 272 P.3d 769 (requiring a defendant to establish prejudice to succeed on a claim of ineffective assistance of counsel).

## II. Sufficiency of the Evidence

¶13    Finally, Moore claims that the evidence was insufficient to prove that he actually touched Child's genitals. Moore's argument has two parts: first that Child's description of the location of the touch was so inconsistent as to be apparently false and second that the State did not establish that Child actually understood the word "vagina." Evidence is sufficient to support a conviction "if, 'upon reviewing the evidence and all inferences that can be reasonably drawn from it, . . . some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt.'" *State v. Kihlstrom*, 1999 UT App 289, ¶ 8, 988 P.2d 949 (omission in original) (quoting *State v. Dibello*, 750 P.2d 1221, 1225 (Utah 1989)); *see also State v. Colwell*, 2000 UT 8, ¶ 11, 994 P.2d 177 (explaining that Utah appellate courts "review the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the jury verdict").

¶14    When reviewing the sufficiency of the evidence, appellate courts "may not reassess credibility or reweigh the evidence, but must resolve conflicts in the evidence in favor of the jury verdict." *State v. Workman*, 852 P.2d 981, 984 (Utah 1983). We will reverse a jury verdict, however, when the evidence "'is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt.'" *State v. Boss*, 2005 UT App 520, ¶ 9, 127 P.3d 1236 (quoting *State v. Mead*, 2001 UT 58, ¶ 65, 27 P.3d 1115). Witness testimony is inherently improbable and may be disregarded if it is apparently false, meaning that "its falsity is apparent, without any resort to inferences or deductions." *State v. Robbins*, 2009 UT 23, ¶¶ 16–17, 210 P.3d 288 (internal quotation marks omitted); *see also Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002) (explaining that "[w]ithin the narrow limits of the 'incredible dubiosity' rule, a court may impinge upon a jury's function to judge the credibility of a witness" only "[i]f a sole witness [to the crime] presents inherently improbable testimony and there is a

---

3. (...continued)
Mother confronted Moore. Because we resolve the issue on other grounds, we do not reach the State's alternative bases for admitting the statements.

complete lack of circumstantial evidence"). In other words, the witness's testimony must be so weak or inconsistent that it could not form the basis for a conviction beyond a reasonable doubt. *See Robbins*, 2009 UT 23, ¶ 18. Importantly, inherent improbability does "not allow defendants to challenge witness testimony for generalized concerns about a witness's credibility." *Id.* ¶ 19 (internal quotation marks omitted); *see also State v. Watts*, 675 P.2d 566, 568 (Utah 1983) ("Contradictory testimony alone is not sufficient to disturb a jury verdict.").

¶15 Moore claims that Child's testimony was so inconsistent in her description of the location of the touching that it is apparently false. We disagree. Child testified at trial that Moore touched her "vagina," which she described as the "private parts" her underwear cover, and described the location of the touching as "inside my pants," "my vagina," and the skin of her vagina. Although Child also described the touching as on the side of her vagina[4] and several witnesses testified that when Child reported that Moore had touched her "pee-pee," she had also identified the location of the touch as on the "line where the leg meets the thigh" and over her underwear, these inconsistencies do not render her testimony so apparently false or inherently improbable as to justify overturning the jury's verdict. *See Robbins*, 2009 UT 23, ¶¶ 16–19. Rather, they raise questions of credibility that were appropriately resolved by the jury. *See id.* ¶¶ 18–19.

¶16 Moore also claims that the State did not establish that Child actually meant her genitals when she used the word "vagina" to describe where Moore touched her. But the prosecutor explored Child's understanding of the word at trial:

> [STATE]: . . . Did his fingers go underneath your underwear?
>
> [CHILD]: Yes.
>
> [STATE]: Okay, what does your underwear cover?
>
> [CHILD]: My private parts.

---

4. Child's statement that Moore touched the side of her vagina was actually not in response to where the touching was but to how he touched her. Child stated that Moore was "[k]ind of rubbing" her on the side of her vagina.

[STATE]: Okay, and what is your private parts?

[CHILD]: My vagina.

Child's description of her vagina as the "private parts" her underwear covered indicates that she understood the meaning of the term and was not merely parroting language used by her family, investigators, or the prosecution. Furthermore, in her statements around the time the abuse occurred, Child consistently referred to the general area of the touch as her "pee-pee," and her use of the word "vagina" at trial three years later could be attributable as much to the natural process of maturation and vocabulary development between eight and eleven years of age as to outside influence. Certainly, nothing in the record indicates otherwise. In this regard, Moore conceded in his brief that if Child understood the anatomical meaning of vagina, the evidence would be sufficient for the jury to convict him because she testified that Moore touched her "vagina," and we agree with that assessment. We therefore conclude that there was sufficient evidence from which a jury could find that Child referred to her genitalia when she testified that Moore touched her vagina.

¶17 Affirmed.

_____
Stephen L. Roth, Judge

-----

¶18 WE CONCUR:

_____
Carolyn B. McHugh,
Presiding Judge

_____
J. Frederic Voros Jr.,
Associate Presiding Judge