2013 UT App 287

**STATE of Utah, Plaintiff and Appellee,**

v.

**Thomas Devirl CURTIS, Defendant and Appellant.**

**No. 20110799–CA.**

Court of Appeals of Utah.

Dec. 5, 2013.

Grant W.P. Morrison and Court J. Klekas II, for Appellant.

John E. Swallow and Christopher D. Ballard, for Appellee.

Judge STEPHEN L. ROTH authored this Opinion, in which Judges J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

ROTH, Judge:

¶ 1 Defendant Thomas Devirl Curtis appeals his convictions of four counts of rape, *see* Utah Code Ann. § 76–5–402 (LexisNexis Supp. 2013),[1] and four counts of distribution of a controlled substance in a drug free zone, *see id.* §§ 58–37–8(1)(a)(iii), (4)(a)(x) (2012). Defendant argues that his trial counsel provided ineffective assistance by committing a number of errors that prejudiced his defense. According to Curtis, his attorney failed to introduce evidence that would have impeached the victim's testimony, did not interview potential witnesses, and opened the door to damaging impeachment evidence. Curtis also argues that his trial counsel should have moved for a mistrial after the jury and excluded witnesses overheard sidebar conversations. Additionally, Curtis filed a rule 23B motion requesting that we remand his case to the trial court to supplement the record with evidence of his ineffective assistance claim. We deny Curtis's request for remand because he has not provided key pieces of evidence to his rule 23B motion and because the affidavits accompanying his motion fail to allege nonspeculative facts to support his ineffective assistance claim. We also affirm Curtis's convictions because he has not shown that his attorney's failure to intro-

---

1. Throughout this opinion, we cite the current version of the Utah Code because no changes have been made to the relevant statutory provi-
sions that would affect the resolution of the issues presented on appeal.

duce evidence was deficient performance or that other errors that may have occurred resulted in prejudice.

## BACKGROUND

¶ 2 Curtis was convicted of giving a minor victim (M.V.) cocaine and raping her on four occasions.[2] In early 2008, M.V.'s family moved into a two-bedroom home outside the Salt Lake valley. M.V. and her sisters shared one bedroom while Curtis, who lived with the family, used the back bedroom. M.V.'s mother (Mother) usually slept on the living room couch.

¶ 3 After M.V.'s family moved, M.V. accompanied Curtis on a number of trips to Salt Lake City to buy cocaine. She was sixteen or seventeen years old at the time. M.V. testified at trial that she and Curtis would "go up to Salt Lake to get more cocaine, and then [they]'d come back [home] and [they]'d sell some of it. But mostly— mostly [they] just used it." She testified,

> [Defendant] would put [the cocaine] in a spoon and add water, and then he'd put . . . [a] cotton ball in there and he'd use the needle and soak up the liquid through the cotton ball. And then he'd do half, and then he'd fill up the syringe with the other half, and then I would do that one.

M.V. and Curtis used cocaine this way several times in the bathroom of the home and in Curtis's bedroom. M.V. said the cocaine use left scars and bruises on her arms, which she covered with "long sleeve shirts and zip up shirts."

¶ 4 In late January 2008, Curtis and M.V. traveled to Salt Lake for another "drug run." After returning home, they "did cocaine in [Curtis's room]" until about 2:00 a.m. At that point, M.V. "laid down and tried to go to sleep" because she "had to work the next morning." The defendant then raped her.

¶ 5 Over the next several months, Curtis raped M.V. three more times after providing her with cocaine. First, in March 2008, M.V. and Curtis "had been using drugs again . . . and it was just another late night in [Cur-

tis's] room and the same thing happened." A few weeks later, Curtis injected M.V. with cocaine in his bedroom, continued to use cocaine with her "throughout the night," and then "[M.V.] laid down and [the] same incident happened." Finally, in late May 2008, when M.V. returned home from work, the defendant gave her cocaine and used it himself. M.V. said they "continued doing that throughout the night . . . [a]nd then later on" M.V. said she "kind of zoned off a little bit" right before Curtis again raped her.

¶ 6 On December 11, 2009, the State charged Curtis with four counts of rape and four counts of distribution of a controlled substance in a drug-free zone. At trial, the State called M.V. as its first witness. She testified that Curtis had also introduced her to "marijuana" when she "was 12 years old" and that her sister (Sister) "used cocaine with" her and Curtis "a few times." After a brief discussion with counsel at the bench, the court dismissed the jury and the parties argued at length about whether evidence of such other drug use in the home was admissible. The court ruled that any evidence regarding other drug use in the home was inadmissible "unless it occurred on these instances . . . where the alleged sexual activity occurred." The judge reiterated this ruling when the State later asked Sister on direct examination whether Mother knew about Sister's drug use. He noted that unless the State called Sister as a rebuttal witness to impeach Mother or the defendant, "[Sister's] own [drug] use is not relevant. . . . So I will instruct the jury that [Sister's] drug use is not an issue in this case, and we'll go from there."

¶ 7 Defense counsel also expressed some concern that the jury could have heard the earlier sidebar discussion, but he noted that "we may have been talking enough in lawyer code . . . that they didn't exactly clue into what we were talking about." In response to this concern and the prosecution's question about Sister's drug use, the court gave two curative instructions at the defense's request as soon as the jury reconvened. The

---

**2.** "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as neces-

sary to understand issues raised on appeal." *State v. Bluff*, 2002 UT 66, ¶ 2, 52 P.3d 1210 (citation and internal quotation marks omitted).

first directed the jury not to consider "[a]ny evidence of distribution of substance[s] to anyone other than [M.V.]." The second instructed the jurors "not ... to consider any" information they may have heard during "bench discussions" and to "raise your hand" to alert the court if future bench discussions were audible.

¶ 8 The defense's first witness was Mother. On direct examination, she denied that there was "any indication of drug use" in her home and asserted that she "would have known" if there was. She also testified that she "[a]lways" knew what was going on in the family's home and would have "filed the charges [herself]" if there was an inappropriate relationship between M.V. and Curtis. On cross-examination, the State focused on Mother's statements regarding drug use to attack her credibility:

Q. Now, you say you didn't know about drug use in your home. But you did know about marijuana use in your home; is that correct?

A. Yes.

[Curtis's Counsel]: Objection, Judge....

THE COURT: You opened that door on that issue when you asked her if she was aware of drug use in the home. So that's an appropriate question.

. . . .

Q. [Prosecutor]. And so since you knew there was drug use, you did not have charges filed on anyone at that point based on that drug use; is that right?

A. Yes.

¶ 9 On redirect, Mother stated again that if she were aware of drug use or inappropriate sexual activity in the home, Mother "would have been gone." Mother also testified that she did not believe M.V. because, as her mother, she "know[s] when [M.V.]'s lying" and that M.V. "was lying" when she testified in court about Curtis's drug use and inappropriate sexual conduct.

¶ 10 Curtis testified in his own defense. He denied "us[ing] cocaine with [M.V.]," "inject[ing] [M.V.] with cocaine," and "hav[ing] sexual intercourse with" M.V. On cross-examination, over the defense's objection, the court allowed the State to question Curtis

regarding marijuana use in the home because Mother had already denied that there was any drug use in the home. Curtis readily admitted that he "smoke[d] marijuana," but when asked if M.V. and her sisters also smoked marijuana, he responded, "No, with me, no."

¶ 11 The State called Sister as a rebuttal witness. She testified that she saw the defendant use cocaine with M.V. "several times ... in the bathroom[and] in the bedroom" of the family's home. Defense counsel objected, citing the court's prior decision excluding evidence of drug use other than the cocaine use that accompanied the four instances of sexual abuse. After a lengthy discussion, the court allowed Sister's testimony to rebut the defendant's assertion that he never used cocaine with M.V., Mother's allegations that M.V. was lying, and Mother's statement that no drug activity ever occurred in the home.

¶ 12 The jury convicted Curtis of four counts of rape and four counts of distribution of a controlled substance. Curtis appeals.

ISSUES AND STANDARD OF REVIEW

¶ 13 Curtis requests that we remand this case to the trial court under rule 23B of the Utah Rules of Appellate Procedure to create a record regarding his ineffective assistance of trial counsel claim. *See* Utah R.App. P. 23B(a). Rule 23B allows a criminal defendant asserting an ineffective assistance claim to "move the court to remand the case to the trial court for entry of findings of fact" that are necessary for an appellate court to resolve the claim. *Id.* Although not strictly a standard of appellate review, we grant such motions "only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Id.*

¶ 14 Curtis also argues that he received ineffective assistance of counsel because his attorney (1) "failed to present photographs that questioned [M.V.'s] credibility and testimony"; (2) did not present the results of a hair follicle drug test that Curtis alleges shows M.V. did not use cocaine; (3) never introduced into evidence a Division of Child

and Family Services (DCFS) report showing M.V. had previously denied having an inappropriate relationship with the defendant; (4) "failed to investigate and interview potential witnesses"; (5) mistakenly opened the door to cross-examination questioning that damaged defense witnesses' credibility; and (6) failed to move for a new trial after the jury and several witnesses overheard sidebar conversations. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

## ANALYSIS

### I. Rule 23B Motion for Remand

¶ 15 Curtis requests remand under rule 23B to the trial court for factual supplementation of the record regarding his ineffective assistance of counsel claims. Rule 23B motions are "available only in limited circumstances, to supplement the record with known facts needed for an appellant to assert an ineffectiveness of counsel claim on direct appeal." *State v. Johnston*, 2000 UT App 290, ¶ 23, 13 P.3d 175 (per curiam). "There are four basic requirements": the motion must (1) contain a nonspeculative allegation of facts that (2) do not fully appear in the record, which, if true, (3) could support a determination that counsel's performance was deficient, and (4) demonstrate that the defendant suffered prejudice as a result. *Id.* ¶¶ 8–13; *see also* Utah R.App. P. 23B(a).

¶ 16 Rule 23B motions must "be accompanied by affidavits ... that show the claimed prejudice suffered by the appellant as a result of the claimed deficient performance." Utah R.App. P. 23B(b). This means that a defendant must not only identify uncalled witnesses or other evidence that he claims should have been presented at trial, but must go further, providing affidavits from the uncalled witnesses "detailing their testimony" and other "evidence he intends to present on remand," together with an explanation of "how that evidence supports both prongs of" his ineffective assistance claim. *Johnston*, 2000 UT App 290, ¶ 11, 13 P.3d 175; *see also State v. Christensen*, 2013 UT App 163, ¶¶ 2, 4, 305 P.3d 222 (per curiam)

(denying a rule 23B motion because the defendant did not include "certain medical records and an insurance report" with her motion). Where facts in the record already support the claim or a defendant "merely hopes to discover evidence suggesting ineffectiveness," remand is not available under rule 23B. *Johnston*, 2000 UT App 290, ¶ 23, 13 P.3d 175.

¶ 17 Curtis argues that remand is necessary under rule 23B because his attorney "failed to utilize" readily available evidence. Specifically, he asserts that his attorney failed to introduce (1) photographs taken six weeks after M.V.'s cocaine use showing no track marks on her arms, (2) a hair follicle drug test showing M.V. tested negative for cocaine, and (3) a DCFS report where M.V. denied that Curtis abused her. Curtis also urges rule 23B remand because his attorney made several other mistakes: failing to interview potential witnesses, not moving for a new trial after "the jury and witnesses had been tainted by hearing the [court's] sidebars [with the attorneys]," and mistakenly opening the door to damaging impeachment testimony. We conclude that the defendant has failed to demonstrate that remand is appropriate.

### A. Remand Is Not Justified To Consider the Photographs, Drug Test, and DCFS Report.

¶ 18 With respect to the evidence not introduced, Curtis has failed to allege nonspeculative facts as rule 23B requires. *See* Utah R.App. P. 23B(a) ("The motion shall be available only upon a nonspeculative allegation of facts...."); *Johnston*, 2000 UT App 290, ¶ 10, 13 P.3d 175. Fact allegations are insufficient unless the defendant "present[s] this court with the evidence he intends to present on remand and explain[s] how that evidence supports" an ineffective assistance of counsel claim. *Johnston*, 2000 UT App 290, ¶ 11, 13 P.3d 175. In *Johnston*, this court held that a defendant's affidavit that identified four witnesses and briefly described how they would testify did not allege nonspeculative facts because it gave "no indication that [the defendant] ha[d] met with those witnesses or confirmed their purported

testimony." *Id.* ¶ 17. Rather, to satisfy rule 23B, the defendant was required to "submit affidavits from prospective witnesses detailing their testimony and availability." *Id.* ¶ 19. Similarly, in *State v. Christensen*, 2013 UT App 163, 305 P.3d 222 (per curiam), we denied a rule 23B motion that was based on counsel's failure to introduce an insurance report and medical records into evidence. *Id.* ¶¶ 2, 4. Even though the motion was "supported . . . by an affidavit from appellate counsel reporting portions of the proposed evidence," the medical records and insurance report themselves were "not included with the motion for remand." *Id.* ¶ 4.

■ ¶ 19 Here, Curtis failed to include several key pieces of evidence with his motion. Although affidavits from Mother, Curtis's sister, M.V.'s foster mother (Foster Mother), and Curtis's mother all mention photographs showing M.V. had no track marks on her arms six weeks after she claims to have used cocaine with Curtis, the photographs themselves were not provided. Similarly, Curtis's supporting memorandum refers to a hair follicle drug test "showing [M.V.'s] negative results for cocaine use," but he does not provide the test results in any evidentiary form. Curtis's motion also describes a DCFS report showing that M.V. denied Curtis abused her. The defendant cites a specific page of the report in his motion, but he does not provide a copy of the report itself.[3] "Absent the evidence that is the subject of the motion for remand, this court is left with only speculation about the content and value of the proposed evidence." *Id.* ¶ 4. Thus, without the photographs, tests results, or the DCFS report, the motion for remand is based "largely upon hearsay and allegations reciting what [Curtis] hopes" the evidence will show, *see Johnston*, 2000 UT App 290, ¶ 18, 13 P.3d 175, and not on the required "nonspeculative allegation of facts," Utah R.App. P. 23B(a). Consequently, Curtis has not met the requirements for remand on these issues.

## B. Remand Is Not Justified To Consider Testimony from Uncalled Witnesses.

■ ¶ 20 For similar reasons, Curtis's motion does not justify remand to supplement the record with testimony from "Jonathan Rowley [of DCFS] and M.B."—two potential witnesses the defendant argues his attorney should have interviewed and called at trial. First, Curtis has not attached an affidavit detailing M.B.'s testimony. *See State v. Johnston*, 2000 UT App 290, ¶ 11, 13 P.3d 175 (per curiam). Instead, he relies on Mother's affidavit, which simply states, "[M.B.] spent a lot of time at our home and she would have been able to dispute some of what [M.V.] testified to in court." Mere "recitation of what [a witness] would have said," however, "is speculative[,] . . . is largely conclusory," and does not satisfy the requirements of rule 23B. *Id.* ¶ 17. Second, while Curtis's motion identifies Jonathan Rowley as the author of the DCFS report, there is no affidavit from Rowley detailing the substance of his testimony. The only reference to Rowley in any of the four affidavits Curtis attached to his motion is one sentence from Curtis's mother's affidavit: "The DCFS worker who ordered the drug testing was not called at trial." This falls well short of rule 23B's requirement that defendants "identify . . . uncalled witnesses" and "identify specific facets of their testimony that might have helped [the] case." *State v. Vessey*, 967 P.2d 960, 965 n. 5 (Utah Ct. App.1998).

## C. Remand Is Not Justified To Consider the Influence of Allegedly Overheard Sidebar Conversations.

■ ¶ 21 Curtis has also failed to demonstrate that remand is appropriate to supplement the record with evidence that "the jury and witnesses had been tainted by hearing the [court's] sidebars [with the attorneys]." Curtis maintains that his attorney "should have motioned the court for a new trial"

---

**3.** There is some information in the record about the DCFS report because the parties discussed its contents at a preliminary hearing. *See infra* ¶ 37. That discussion indicates that some aspects of the report may have helped Curtis's defense while others threatened it. *See infra* ¶¶ 38–39. Failing to include a copy of the report therefore significantly undermines support for rule 23B remand because we are unable to determine whether the report as a whole would support Curtis's position.

instead of requesting a curative instruction and that Curtis received ineffective assistance as a result. However, "the affidavits supporting [a rule 23B] motion must 'allege facts that' ... demonstrate prejudice, i.e., that the result would have been different had counsel's performance not been deficient." *Johnston*, 2000 UT App 290, ¶ 13, 13 P.3d 175 (quoting Utah R.App. P. 23B(b)). Curtis has not satisfied this standard.

¶ 22 At the beginning of Curtis's trial, the prosecutor invoked the exclusionary rule under rule 615 of the Utah Rules of Evidence. Rule 615 provides that parties may request exclusion of witnesses "so that they cannot hear other witnesses' testimony." Utah R. Evid. 615. The purpose of the rule "is to prevent witnesses from being influenced or tainted by the testimony of other witnesses," *Astill v. Clark*, 956 P.2d 1081, 1087 (Utah Ct.App.1998), or "other evidence adduced at trial," *State v. Billsie*, 2006 UT 13, ¶ 10, 131 P.3d 239 (citation and internal quotation marks omitted). Violation of an exclusionary order can be grounds for a mistrial, but "the burden is on the accused to demonstrate that he has been prejudiced to the extent that a mistrial should be granted." *Id.* ¶ 12 (citation and internal quotation marks omitted). And courts will not grant a motion for a mistrial unless the defendant shows that an "incident so likely influenced the jury that the defendant cannot be said to have had a fair trial." *State v. Vargas*, 2001 UT 5, ¶ 44, 20 P.3d 271 (citation and internal quotation marks omitted). Thus, in order to justify rule 23B remand, Curtis must allege nonspeculative facts that indicate a witness changed her testimony after hearing court proceedings, thereby prejudicing Curtis to the extent that he cannot be said to have had a fair trial. *Cf. State v. Cramer*, 2002 UT 9, ¶¶ 32–33, 44 P.3d 690 (affirming denial of a motion for mistrial because the defendant "did not provide the trial court with evidence that [the witness] changed his testimony" after violation of an exclusionary order (citation and internal quotation marks omitted)).

¶ 23 Curtis has not shown prejudice. He submits affidavits from his mother, his sister, Mother, and Foster Mother. Curtis's mother stated that she could "overhear the sidebar conversations that were being held between the attorneys and the Judge." She also mentioned that "[w]itnesses outside the courtroom were ... able to hear the contents of the court proceedings," including Mother and Foster Mother, who both testified at trial. Mother stated that she, "along with the other witnesses in this case, sat outside the court ... [and] could hear what was being said and by whom." The defendant's sister also "overhear[d] the sidebar conversations that were being held between the attorneys and the Judge." She "informed [defendant's trial counsel]" that she could "hear the contents of the sidebar conversation" and noticed that "[w]itnesses outside the Courtroom were also able to hear the contents of the court proceedings." Finally, Foster Mother stated that she and "the other witnesses in this case[ ] could hear what was being said in the courtroom due to the microphone of the judge projecting those conversations" and that "[t]hose outside the courtroom could hear enough to recognize who was speaking and some of what was being said."

¶ 24 Although each affidavit provides evidence that the exclusionary order was ineffective, none of them "provide ... evidence that [witnesses] changed [their] testimon[ies]" because they overheard sidebar conversations or other court proceedings. *See Cramer*, 2002 UT 9, ¶ 33, 44 P.3d 690. Three of them are silent on the issue, and Foster Mother simply expressed concern "that this issue may have affected the testimony of other witnesses in this case," without identifying specific information the witnesses overheard that could have had such an effect. "This invitation to speculate cannot substitute for proof of prejudice," *see State v. Arguelles*, 921 P.2d 439, 441 (Utah 1996), and Curtis has therefore failed to persuade us that remand is appropriate on this issue.

¶ 25 We conclude for similar reasons that remand is not necessary on the issue of whether Curtis's attorney should have moved for a new trial "based on the possibility that the jury improperly overheard several sidebar conversations." Defendant's trial counsel, who participated in

each sidebar conversation, requested and received a curative instruction rather than moving for a mistrial. "In the absence of the appearance of something persuasive to the contrary, we assume that the jurors were conscientious in performing ... their duty, and that they followed the instructions of the court." *State v. Burk*, 839 P.2d 880, 883 (Utah Ct.App.1992). And curative instructions are "ordinarily presumed on appeal to be effective," *State v. Winward*, 941 P.2d 627, 635 (Utah Ct.App.1997), absent a "substantial and prejudicial" underlying error or irregularity, *State v. Hodges*, 30 Utah 2d 367, 517 P.2d 1322, 1325 (1974). In order to justify remand, Curtis must therefore allege facts showing that sidebar discussions likely so tainted the jury that "there is a reasonable probability that [Curtis] cannot have [had] a fair and impartial determination of his guilt or innocence." *See Hodges*, 517 P.2d at 1324.

¶ 26 The defendant has not alleged facts demonstrating that his trial counsel's decision prejudiced the result in his case. In his rule 23B motion, Curtis states that "the information the jury overheard could not be erased by a curative instruction," but he does not describe in meaningful detail the contents of the sidebar discussions or analyze why they would have had this effect.[4] Of the four affidavits Curtis includes with his motion, two briefly mention that the jury overheard sidebar discussions. Defendant's mother states in her affidavit that "[d]uring the first sidebar conversation[ ]" that she overheard, "the Jury was present in the Courtroom and was able to hear parts of the conversations that were being held." Defendant's sister's affidavit also mentions that "the Jury was present in the Courtroom" when she overheard "the first sidebar conversations." But neither affidavit describes the contents of those conversations or how they may have affected the jury. Without more, "there is no reason to believe that the jury [was] ... unable to follow the court's instructions and ignore" the sidebar discussions. *See State v. Menzies*, 889 P.2d 393,

402 (Utah 1994). Remand to supplement the record on this issue is therefore not required.

D. Remand Is Unnecessary To Determine Whether Opening the Door to Evidence of Drug Use Prejudiced Curtis's Defense.

¶ 27 Finally, remand is not necessary on Curtis's claim that his attorney was ineffective for mistakenly opening the door to damaging impeachment testimony because that issue can be decided on the existing record. " 'Rule 23B is directed to cases where some crucial factual information is *absent* from the record,' " not " 'the typical ineffective assistance case where the parties dispute whether trial counsel's actions reflected some strategy, given the facts established by the record.' " *State v. Johnston*, 2000 UT App 290, ¶ 9, 13 P.3d 175 (per curiam) (quoting *State v. Tennyson*, 850 P.2d 461, 468 n. 5 (Utah Ct.App.1993)).

¶ 28 Here, Curtis fails to identify any crucial factual information absent from the record. Curtis argues that he received ineffective assistance when his trial counsel opened the door to evidence of marijuana use in his home. The court had previously excluded all evidence of drug use except for the four instances of cocaine use that accompanied the sexual abuse. On direct examination, however, Curtis's attorney did not confine his questions to the alleged cocaine use. He asked Mother more broadly if she ever saw "any indication of *drug* use" in her home, and she said no. (Emphasis added.) After Mother's testimony, the court allowed the State to ask Mother and the defendant about marijuana use in the home because trial counsel had "opened that door on that issue when [he] asked [Mother] if she was aware of *drug* use in the home." (Emphasis added.) By "accidentally [saying] 'drug use' when he meant to say 'cocaine use,' " Curtis argues, trial counsel rendered ineffective assistance. All of the facts necessary to resolve this claim, however, appear in the trial court

4. Curtis's brief implies that the jury overheard a sixteen-minute objection hearing on the admissibility of Sister's drug use with Curtis that took place after the three unrecorded bench discussions at issue. The trial transcript, however, indicates that the jury left the courtroom before the hearing took place, and there is some indication that the court took steps to mute its sound system during the hearing.

transcript of Mother's and Curtis's testimonies, and neither Curtis's motion nor its supporting affidavits identify any pertinent facts outside the record. Consequently, remand is unnecessary on this issue.

¶ 29 In summary, we conclude that rule 23B remand is unnecessary to resolve Curtis's claims on appeal. Because Curtis has not provided the evidence absent from the record he argues supports his claim—the photographs, drug test results, DCFS report, or affidavits from Rowley and M.B.—he has not alleged nonspeculative facts showing ineffective assistance as rule 23B requires. Additionally, the affidavits supporting Curtis's motion provide no facts indicating that witnesses changed their testimonies or that the jury was irreparably biased by overhearing sidebar conversations. Finally, whether Curtis received ineffective assistance when his attorney opened the door to evidence of marijuana use can be decided on the existing record.

## II. Ineffective Assistance

¶ 30 Curtis argues that his trial counsel did not provide him with effective assistance. He asserts that because the case was essentially "a credibility contest between [M.V.] and [the defendant]," his counsel should have used every "opportunit[y] to cast doubt on [M.V.'s] credibility and testimony." Specifically, Curtis maintains that his attorney should have presented "photos, drug test results, [and] a [DCFS] report" that Curtis asserts would have undermined M.V.'s credibility. Additionally, Curtis argues that his counsel was ineffective for failing to "interview potential witnesses that would have called into question . . . [M.V.'s] credibility" and for "failing to motion for a new trial after . . . the jury and excluded witnesses" overheard sidebar conversations. Finally, Curtis argues that his counsel was deficient for "opening the door to damaging cross-examination" and "impeachment testimony" regarding drug use in the home.

¶ 31 We have already discussed many of these issues in the context of Curtis's rule 23B motion. Of the four requirements for rule 23B remand, two involve the merits of the underlying ineffective assistance claim, and two do not.[5] Where our rule 23B remand analysis turned on considerations unique to that rule, we consider each issue anew. But where our rule 23B analysis has already resolved an underlying ineffective assistance issue, we refer back to the pertinent section of this decision.

¶ 32 "The Sixth Amendment to the United States Constitution guarantees all defendants the right to effective assistance of counsel." *State v. Lenkart*, 2011 UT 27, ¶ 25, 262 P.3d 1; *see also* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). To determine whether a defendant received effective assistance, Utah courts apply the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Lenkart*, 2011 UT 27, ¶ 25, 262 P.3d 1. " 'First, the defendant must show that counsel's performance was deficient.' " *State v. Templin*, 805 P.2d 182, 186 (Utah 1990) (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). " 'Second, the defendant must show that the deficient performance prejudiced the defense.' " *Id.* (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

¶ 33 Counsel's performance is not deficient if it falls within "an objective standard of reasonableness" in light of "prevailing professional norms." *Kell v. State*, 2008 UT 62, ¶ 28, 194 P.3d 913 (citations and internal quotation marks omitted), *aff'd*, 2012 UT 25, 285 P.3d 1133. And we must begin any analysis with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citation and internal quotation marks omitted). In particular, appellate courts "give trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis support-

---

5. As we have discussed, the merits of a rule 23B motion involve four basic questions: (1) Does the ineffective assistance claim depend on facts not in the record? (2) If so, are those facts nonspeculative—readily demonstrable by the affidavits submitted in support of the motion? (3) Do those facts show deficient performance? (4) Do those facts show prejudice? *See State v. Gunter*, 2013 UT App 140, ¶ 16, 304 P.3d 866.

ing them." *State v. Crosby*, 927 P.2d 638, 644 (Utah 1996). " 'Decisions as to what witnesses to call, what objections to make, and by and large, what defenses to interpose, are generally left to the professional judgment of counsel.' " *State v. Franco*, 2012 UT App 200, ¶ 7, 283 P.3d 1004 (quoting *State v. Wood*, 648 P.2d 71, 91 (Utah 1982)).

¶ 34 To prove prejudice, a defendant must show that his trial counsel's deficient performance was " 'so serious' " that it " 'deprive[d] the defendant of a fair trial,' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Lenkart*, 2011 UT 27, ¶ 38, 262 P.3d 1 (quoting *Strickland*, 466 U.S. at 687, 694, 104 S.Ct. 2052). Stated differently, there must be "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *State v. Hales*, 2007 UT 14, ¶ 86, 152 P.3d 321 (citation and internal quotation marks omitted). A reasonable probability is one "sufficient to undermine confidence in the [jury verdict]." *Id.* (alteration in original) (citation and internal quotation marks omitted). Consequently, errors that have merely "an isolated[,] trivial effect" on the verdict are not prejudicial, *id.* (citation and internal quotation marks omitted), and "proof of ineffective assistance of counsel cannot be ... speculative, ... but must be a demonstrable reality," *State v. Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082 (citation and internal quotation marks omitted). Appellate courts may resolve an ineffective assistance claim on prejudice alone if "the ineffectiveness ... did not prejudice the trial's outcome." *State v. Goddard*, 871 P.2d 540, 545 (Utah 1994) (citing *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052).

A. Curtis Has Not Shown that Any Failure by Trial Counsel to Introduce the Photographs, DCFS Report, and Drug Test Results Amounted to Ineffective Assistance.

¶ 35 Curtis has not shown that his counsel's performance was deficient for failing to introduce into evidence the photographs, DCFS report, and drug test results. First, none of this evidence appears in the record, and Curtis did not include it in his rule 23B motion for remand. Without it, we have no way of knowing whether the photographs actually show M.V.'s arms free of scarring soon after the alleged cocaine use, whether M.V. actually tested negative for cocaine, or whether the DCFS report was so compelling that no reasonable attorney would have failed to introduce it into evidence. On appeal, we "presume that any argument of ineffectiveness presented to [us] is supported by all the relevant evidence of which the defendant is aware," and "ambiguities or deficiencies resulting [from an inadequate record] simply will be construed in favor of a finding that counsel performed effectively." *State v. Litherland*, 2000 UT 76, ¶ 17, 12 P.3d 92. Without any of this evidence before the court, Curtis's claim that his trial counsel performed deficiently for failing to introduce it cannot succeed because it remains "speculative" and not "a demonstrable reality." *See Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082 (citation and internal quotation marks omitted).

¶ 36 Second, given the uncertainty surrounding this evidence, we cannot say there was "no reasonable basis" supporting the decision to leave it out. *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (citation and internal quotation marks omitted). M.V. testified at trial that the scars from her intravenous drug use with the defendant were still visible. And trial counsel may have been concerned that M.V. did in fact have some scarring and chose not to push the issue for fear the State would have the jurors inspect M.V.'s arms to see for themselves. Counsel's efforts to impeach M.V.'s credibility by using the fact that she "told DCFS at one point that [the] marks on [her] arms were self-mutilation" is certainly consistent with such a strategy. Likewise, there is no evidence in the record or in Curtis's 23B motion that M.V. tested negative for cocaine. But even if there were, counsel used the State's own failure to introduce the report to Curtis's advantage in his closing argument:

> What happened to that [drug] test? Where is that? Where is the expert that came in and said either we found cocaine or because of the time lapse we couldn't find cocaine?

. . . .

I mean, somebody has to come in and tell you something because you're not allowed to guess about what happened. They didn't bring—they didn't bring it up.

¶ 37 Finally, the trial transcript suggests that introducing the DCFS report into evidence could have harmed Curtis's case. Although, as we have discussed, the report itself is not in the record, the parties described some of its contents briefly at a preliminary hearing. According to that discussion, DCFS began its investigation in April 2008 after someone reported seeing the defendant kiss M.V. on the lips. But when DCFS interviewed M.V. in May 2008, she denied any inappropriate relationship between Curtis and herself. Later that summer, DCFS interviewed M.V. again after Sister told some out-of-state relatives that Curtis gave Sister drugs and had sex with Sister. M.V. denied Sister's allegations and stated again that Curtis had never given M.V. drugs or sexually abused her. In December 2009, however, M.V. came forward and told investigators that Curtis had in fact abused her and recanted her previous denials.

¶ 38 Before trial, defendant's trial counsel discussed the potential effects of introducing DCFS's report with the court: "Now, . . . what I don't want to happen is I don't want the jury to necessarily know of that earlier investigation [concerning Sister]. But my dilemma is that [M.V.] said, you know, some matter of months . . . before she said black, she said white." The court responded that impeaching M.V. with her prior statements to DCFS investigators would open the door to the entire content of the two interviews—including questions related to Sister's allegations. After consulting with Curtis, trial counsel told the court that he "would like to endeavor not to open the door and not talk about [M.V.'s] prior inconsistent statements."

¶ 39 On the record before us, we cannot say that this decision was outside "the wide range of reasonable professional assistance." *See Kell v. State,* 2008 UT 62, ¶ 28, 194 P.3d 913 (citation and internal quotation marks omitted), *aff'd,* 2012 UT 25, 285 P.3d 1133. Introducing the DCFS report may have

"cast[ ] doubt upon the testimony of each of the prosecution's witnesses," as Curtis asserts, but it also threatened his defense. Considering the latitude trial counsel has in making tactical and strategic decisions, including " 'what witnesses to call, what objections to make, and by and large, what defenses to interpose,' " *State v. Franco,* 2012 UT App 200, ¶ 7, 283 P.3d 1004 (quoting *State v. Wood,* 648 P.2d 71, 91 (Utah 1982)), failing to impeach M.V. with evidence that would have opened the door to other information that was potentially damaging was not ineffective assistance. Rather, it appears to be the kind of risk-benefit analysis that competent counsel is required to undertake in most criminal trials.

B. Curtis Has Not Shown that His Attorney Failed to Investigate Potential Witnesses or that Any Such Failure Prejudiced His Defense.

¶ 40 For similar reasons, the defendant has not demonstrated that his attorney provided ineffective assistance by failing to interview Jonathan Rowley or M.B. Curtis cites *State v. Templin,* 805 P.2d 182 (Utah 1990), for the proposition that it is never a tactical decision not to interview a potential witness. In *Templin,* the Utah Supreme Court reversed a rape conviction because defense counsel failed to interview a witness "who would have testified that she saw defendant and the victim kissing passionately for over fifteen minutes . . . at the address of and within an hour of the rape reported by the victim." *Id.* at 188–89 (internal quotation marks omitted). This testimony, the court noted, would have contradicted the victim's testimony, which was "the only direct evidence of [the defendant's] guilt." *Id.* at 188. But the court also mentioned in a footnote that failing to interview and call another witness was not ineffective assistance because even though the defendant "provided . . . an affidavit stating that [the witness] was never contacted by trial counsel," he did not provide "any evidence concerning what [the witness] would have testified to . . . [at] trial." *Id.* at 188 n. 26. "Therefore," the court held, the defendant could not show "a reasonable probability that the result of his trial

would have been different" had the witness testified. *Id.*

¶ 41 Here, while the defendant's brief mentions that his trial counsel "was aware of other potential witnesses[,] Jonathan Rowley of the [DCFS] and [M.B.]," he does not assert that trial counsel failed to interview Rowley. And although Curtis does argue that "[i]t is unclear why counsel decided not to interview [M.B.]," neither the record nor the four affidavits attached to Curtis's 23B motion reasonably support an assertion that no interview took place. Rather, Mother states that she "informed [defendant's trial counsel] about the existence of [M.B.] ... and [that] she would have been able to dispute some of what [M.V.] testified to in court." She does not assert that the defendant's trial counsel failed to interview M.B.

¶ 42 Even were we to assume that trial counsel failed to interview both witnesses, Curtis has not shown that he was prejudiced. Other than Mother's statement that M.B. "was a family friend [who] ... spent extensive time" at the home and "would have given testimony that would undermine [M.V.'s] testimony," Curtis provides no description of what M.B. would have testified to at trial. Similarly, the most detailed description of Rowley's potential testimony is a single line in the defendant's mother's affidavit: "The DCFS worker who ordered [M.V.'s] drug testing was not called at trial." Without nonspeculative evidence establishing what each witness could have testified to at trial, Curtis has not shown that any deficient performance by trial counsel in failing to interview them was "'so serious'" that it "'deprive[d] [him] of a fair trial,' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,'" *State v. Lenkart*, 2011 UT 27, ¶ 38, 262 P.3d 1 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

C. Curtis Has Not Shown that Trial Counsel's Decision to Request a Curative Instruction Rather Than Move for a Mistrial Amounted to Ineffective Assistance.

 ¶ 43 Curtis has not shown "a demonstrable reality," *State v. Munguia*, 2011 UT

5, ¶ 30, 253 P.3d 1082 (citation and internal quotation marks omitted), that his counsel was deficient or that he suffered prejudice when counsel requested a curative instruction instead of moving for a new trial after the jury and excluded witnesses overheard sidebar conversations. There are three unrecorded sidebar conversations at issue. The first occurred after M.V. testified that Curtis had introduced her to marijuana when she was twelve years old and that she also used mushrooms and cocaine with Curtis. The second took place after M.V. stated that the fourth rape occurred "just a few days after we got served [with] more papers." Defendant's trial counsel requested the last sidebar conference after M.V. mentioned that she and Curtis "used cocaine ... with [her] sister a few times." At that point, the court dismissed the jury and the parties argued at length on the record about whether evidence of other drug use in the home was admissible. Defendant's attorney—who was privy to each unrecorded conversation—expressed concern that the jurors may have overheard but said, "we may have been talking enough in lawyer code ... that they didn't exactly clue into what we were talking about." After recalling the jury, the court gave two curative instructions at counsel's request: First, the jury was not to consider "[a]ny evidence of distribution of substance[s] to anyone other than [M.V.]," and second, it should not consider any information overheard during bench discussions. Curtis argues that there was "no conceivable, tactical basis" for requesting curative instructions instead of moving for a mistrial and that this decision prejudiced Curtis's defense. We are not persuaded.

 ¶ 44 Whether to move for a mistrial or request a curative instruction is a strategic decision that is "'generally left to the professional judgment of counsel.'" *State v. Franco*, 2012 UT App 200, ¶ 7, 283 P.3d 1004 (quoting *State v. Wood*, 648 P.2d 71, 91 (Utah 1982)). For the most part, appellate courts refrain from second-guessing trial counsel's legitimate strategic choices, *id.*, to avoid the "distorting effects of hindsight" that would result from evaluating "counsel's

performance on the basis of an inanimate record," *State v. Tennyson,* 850 P.2d 461, 466 (Utah Ct.App.1993) (citation and internal quotation marks omitted). This standard takes into account the fact that trial counsel, "[u]nlike a later reviewing court, ... observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington v. Richter,* —— U.S. ——, ——, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011). Accordingly, if there is any "plausible strategic explanation for counsel's behavior," we assume counsel acted competently. *Tennyson,* 850 P.2d at 468.

¶ 45 Here, there is almost no evidence in the record or in the defendant's rule 23B motion that describes the content of the unrecorded sidebars. Curtis's trial counsel, a participant in each discussion, described them as focused on technical evidentiary issues—"prior bad acts and uncharged, that sort of stuff"—that may have been "enough in lawyer code ... that [the jury] didn't exactly clue into what [they] were talking about." If this characterization is accurate—and Curtis has not identified any evidence that it is not—there was no basis for a conclusion that the jurors were irreparably biased or that lay witnesses would alter their testimonies after hearing a highly technical evidentiary discussion. This is especially true where Curtis's counsel, an experienced trial attorney who had been privy to all that was said at the pertinent bench conferences, judged that whatever the jury might have heard was relatively obscure and could be remedied with an instruction from the judge. *See State v. Moore,* 2012 UT App 227, ¶ 6, 285 P.3d 809 (recognizing that ineffective assistance claims fail if any "conceivable legitimate tactic or strategy can be surmised from counsel's actions" and that there is "a strong presumption that trial counsel was competent" (citations and internal quotation marks omitted)). Further, a successful mistrial motion would have meant a new jury. Curtis's attorney may have been satisfied with the jury and concluded that the possibility of a less sympathetic jury outweighed any marginal benefit his client might receive from a new trial. Consequently, we cannot say that requesting a curative instruction instead of moving for a mistrial lacked any plausible strategic basis, particularly considering our duty to "construe[ ] ambiguities or deficiencies" in the record "in favor of finding that counsel performed effectively," *State v. Litherland,* 2000 UT 76, ¶ 17, 12 P.3d 92.

¶ 46 But even if we assume that defendant's trial counsel performed deficiently, we are not persuaded that Curtis suffered any prejudice. For reasons we have already discussed, Curtis has not shown that the sidebar conversations altered witness testimony or affected jurors in a way that undermined the integrity of his trial. *See supra* ¶¶ 21–26.

### D. Curtis Has Not Shown that Opening the Door to Evidence of "Other Drug" Use Materially Prejudiced His Defense.

¶ 47 Curtis argues that he received ineffective assistance when his attorney "inadvertently opened the door to impeachment testimony" and "cross-examination that undermined the defense's credibility." Early in Curtis's trial, the court ruled inadmissible evidence of drug use other than the cocaine use alleged to have accompanied each instance of sexual abuse. But during Mother's direct examination, the defendant's attorney asked a broader question—whether she ever saw "any indication of *drug use* going on in [her] home?" (Emphasis added.) As a consequence, on cross-examination, the court permitted the prosecution to ask Mother and Curtis about marijuana use because trial counsel "opened th[e] door on that issue when [he] asked [Mother] if she was aware of drug use in the home," instead of limiting her testimony to cocaine use. Sister was also permitted to testify for the prosecution in rebuttal that she had seen the defendant and M.V. use cocaine together "several times."

¶ 48 Curtis argues that evidence of marijuana use and other cocaine use "was not initially admissible" and "[b]ut for Counsel's ... blunder, [Sister] would not have testified as a rebuttal witness [and] would not have corroborated [M.V.'s] testimony." He also asserts that the error undermined Curtis's and Mother's testimony and "prejudiced the jury against ... Curtis because of the drug

distribution charges alleged against him." Even if we assume Curtis's attorney performed deficiently by failing to limit his question to cocaine use, Curtis has not shown that Sister's rebuttal testimony about Curtis's cocaine use with M.V. or the evidence of marijuana use resulted in material prejudice.

### 1. Sister's Rebuttal Testimony Did Not Result in Prejudice.

¶ 49 Opening the door to Sister's rebuttal testimony did not prejudice Curtis's defense because that testimony would have been admissible even if trial counsel had limited Mother's testimony to cocaine use. As we have discussed, Curtis must show "a reasonable probability that, absent the error[ ], the factfinder would have had a reasonable doubt respecting guilt," *State v. Hales*, 2007 UT 14, ¶ 86, 152 P.3d 321 (citation and internal quotation marks omitted). Where an attorney opens the door to damaging evidence, there is no prejudice if the evidence is admissible independent of the attorney's error. *See State v. Gonzales*, 2005 UT 72, ¶ 68, 125 P.3d 878. In *Gonzales*, the Utah Supreme Court held that an attorney did not render ineffective assistance when she mistakenly asked a defendant on direct examination if he had ever been "accused" of sexual assault instead of asking whether he had been "convicted." *Id.* ¶¶ 65–66 (internal quotation marks omitted). Even though the error prompted the prosecution to impeach the defendant with evidence that the victim had accused him of sexually assaulting her in the past, the supreme court held there was no prejudice because, among other things, the evidence "was not otherwise inadmissible." *Id.* ¶ 68.

¶ 50 Here, while Curtis correctly points out that his attorney's examination of Mother opened the door to Sister's testimony, the district court also concluded that Sister's testimony would have been admissible even if counsel's questioning of Mother had been limited to "cocaine use" instead of "drug use" in general. When Sister testified on rebuttal that she saw the defendant use cocaine with M.V. "several times," defense counsel objected. After some discussion, the court ruled that Sister's rebuttal testimony was admissi-

ble for three reasons: (1) Mother testified that M.V. "was lying and [Mother was] aware of her lying because she's lived with her"; (2) Mother testified that there was no drug use in the home; and (3) Curtis testified that he never used cocaine with M.V.

¶ 51 On appeal, Curtis's ineffective assistance claim attacks just one of these three grounds for admissibility. Thus, like in *Gonzales*, where the court determined no prejudice resulted because evidence of prior bad acts was admissible independent of the attorney's errors, *id.* ¶ 68, here Sister's rebuttal testimony would have been admissible regardless of any error Curtis's attorney committed. As a result, we are not persuaded that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' " if Curtis's attorney had not opened the door to Sister's rebuttal testimony during Mother's direct examination. *See State v. Lenkart*, 2011 UT 27, ¶ 38, 262 P.3d 1 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984))

### 2. Marijuana Use Testimony Did Not Prejudice Curtis's Defense.

¶ 52 Curtis argues that the prosecutor's cross-examination about marijuana use damaged his case in two ways. First, it "prejudiced the jury against [him] because of the drug distribution charges," and second, it "was used to undermine [Curtis's] and [Mother's] ... testimony." We address each argument in turn.

¶ 53 We begin by noting that "Utah courts have allowed impeachment evidence even though it introduces evidence of a prior bad act if the purpose of the evidence is to affect credibility." *State v. Tucker*, 800 P.2d 819, 824 (Utah Ct.App.1990). Even where impeachment evidence is improperly admitted, the verdict stands unless " 'the likelihood of a different outcome' " absent the improperly admitted evidence is " 'sufficiently high to undermine confidence in the verdict.' " *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992) (quoting *State v. Knight*, 734 P.2d 913, 920 (Utah 1987)). And because the prejudice standard for improperly admitted

evidence is "equivalent" to "the prejudice test of ineffective assistance" claims, *State v. Martinez*, 2013 UT App 154, ¶ 5, 304 P.3d 110, we rely on cases from both areas in our analysis.

¶ 54 Evidence of marijuana use, by itself, is not sufficiently prejudicial to undermine our confidence in the jury's verdict. Proof of prejudice "must be a demonstrable reality," not mere speculation, *Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993), and errors that have an "isolated" or "trivial effect" on the verdict are not prejudicial, *State v. Hales*, 2007 UT 14, ¶ 86, 152 P.3d 321 (citation and internal quotation marks omitted). Accordingly, Utah courts have refused to overturn convictions where the prejudicial effect of improperly admitted evidence was diminished by the presence of more damaging evidence legitimately part of the record. *See, e.g., State v. Houskeeper*, 2002 UT 118, ¶ 26, 62 P.3d 444 (concluding that improperly admitted evidence of defendant's attempt to obtain drugs was harmless because, in light of other evidence, the defendant's solicitation "would come as little surprise to the jury"); *State v. Davis*, 965 P.2d 525, 537–38 (Utah Ct.App.1998) (holding that improperly admitted evidence of drug distribution was harmless error because "far more damaging testimony" established that the defendant regularly sold drugs).

¶ 55 Here, Curtis's and Mother's admissions that they used or acquiesced in marijuana use in a home occupied by several minors certainly did not bolster Curtis's defense, but other evidence of drug use in the family's home likely blunted any prejudicial effect. M.V. testified that by early 2008, when she moved out of Salt Lake, she "had already developed kind of a bad cocaine problem" and had "been shooting up with [Curtis] for a few months." She also mentioned that Curtis used cocaine with her several times a day for a period of seven months and admitted that Mother had "seen [M.V.] smoke pot." [6] And Sister testified that she saw M.V. and Curtis use cocaine "several times" in both the bedroom and the bath-

room of the family's home. Mother's ready admission that she "kn[ew] about marijuana use in [her] home" and Curtis's brief testimony that he "smoke[d] marijuana [himself]" were themselves relatively mild in comparison to the "far more damaging testimony" of pervasive cocaine use over a seven-month period. *See Davis*, 965 P.2d at 537–38. Thus, evidence that Curtis smoked marijuana would have merely an "isolated" or "trivial effect" on the verdict. *See Hales*, 2007 UT 14, ¶ 86, 152 P.3d 321 (citation and internal quotation marks omitted).

¶ 56 We are also not persuaded that opening the door to marijuana use undermined Curtis's and Mother's credibility enough to have a material effect on the verdict. Curtis relies on our decision in *State v. Fowers*, 2011 UT App 383, 265 P.3d 832, to argue that his attorney's mistake fatally undermined Mother's and Curtis's credibility. In that case, we held that the deficient performance of an attorney who inadvertently elicited evidence of his client's prior child sex conviction on direct examination prejudiced his client's defense. *Id.* ¶ 26. The client faced charges of criminal solicitation for making lewd comments to two fifteen-year-old boys, and the trial judge had already ruled that evidence of the prior conviction was inadmissible. *Id.* ¶¶ 2–5, 9. The client ultimately was convicted on charges involving one of the boys. *Id.* ¶ 14. We noted that "there were no other witnesses or physical evidence" of the crime, *id.* ¶ 23, and that "a prior sexual offense against a child is ... likely to suggest a verdict [was made] on an improper, emotional basis," *id.* ¶ 22 (citation and internal quotation marks omitted). As a result, we concluded that absent "information about [the client's] past conviction ..., the jury may have resolved the credibility contest between [the client] and [the victim] differently." *Id.* ¶ 24.

¶ 57 Here, the defendant's case bears some resemblance to *Fowers*—there is no direct physical evidence of Curtis's guilt, and the evidence of marijuana use would not have come in absent his trial counsel's error. But

---

6. Defendant's trial counsel did not object to this portion of M.V.'s testimony, and Curtis has not challenged that decision on appeal.

we are unconvinced that the State's cross-examination regarding marijuana use affected Mother's and Curtis's credibility seriously enough to undermine our confidence in the verdict. First, unlike in *Fowers,* where no other witnesses could corroborate the victims' version of events, *id.* ¶ 23, here Sister testified that she had seen Curtis use cocaine with M.V. "several times" in Curtis's bedroom and the bathroom. This testimony contradicted the defendant's claim that he "never used cocaine with [M.V.]" and supported M.V.'s description of their cocaine use. By contrast, the marijuana use evidence never contradicted Curtis's testimony; on cross-examination Curtis readily admitted that he "smoke[d] marijuana [himself]." Thus, to the extent Curtis's conviction hinged on whether the jury found Curtis's or M.V.'s version of events to be more credible, opening the door to the defendant's marijuana use could have played only a weak role in that determination in light of Sister's direct contradiction of Curtis's testimony.

¶ 58 Second, viewed in context, it is not clear to us that the jury would have viewed Mother or the defendant as significantly less credible after the State cross-examined both of them about marijuana use in the family's home. After M.V. testified that Curtis had repeatedly injected her with cocaine by "put[ting] some [cocaine] in a spoon[,] ... add[ing] water, ... and soak[ing] up the liquid" with a syringe, trial counsel began Curtis's defense by calling Mother to challenge M.V.'s claims:

Q. During this time, again, January through May of 2008, did you ever see any indication of drug use going on in your home?

A. No.

Q. Did you see any needles?

A. Nope.

Q. Did you see any syringes?

A. No.

Q. Did you see any baggies?

A. Nope.

Q. Did you see any spoons?

A. No.

Q. Did you ever smell something burning that was out of the ordinary ... [a]s if cocaine was being burnt?

A. I wouldn't even know what it smelled like, so no.

On cross-examination, Mother readily admitted to marijuana use in her home:

Q [Prosecutor]. Now, you say you didn't know about drug use in your home. But you did know about marijuana use in your home; is that correct?

A [Mother]. Yes.

Curtis also admitted that he smoked marijuana in the home:

Q. So you [Curtis] never used cocaine with [M.V.]?

A [Curtis]. Absolutely not.

Q. Did you know about the marijuana use going on in the home?

. . . .

A. I smoke marijuana myself, yes.

Q. Did the [girls] smoke marijuana also?

A. No, with me, no.

¶ 59 Evidence of marijuana use may have technically impeached Mother's denial that there was any "drug use" in the family's home, but viewed in context with M.V.'s testimony, the jury could have concluded that Mother responded the way she did because she assumed trial counsel was asking about cocaine. Mother never specifically denied that Curtis or any of her daughters smoked marijuana on direct examination, and when the prosecutor asked a narrower question about marijuana use, she admitted it without hesitation. Curtis also never denied marijuana use in the home and readily admitted his own marijuana use when asked. And to the extent Mother's admission had any effect on the jury's perception of her credibility, the State had already effectively portrayed Mother as a biased witness:

Q. And you would—well, you stated in your direct examination that if you had known that something had happened, you would have filed the charges yourself?

A. Yes.

. . . .

Q. What would [it have] taken for you to be convinced something had happened?

A. A kid coming to me and telling me, me seeing it, me hearing something.

Q. Okay. So the fact that your child did come forth and say to the police that something happened, you don't believe that?

A. No.

Q. Okay. In fact, you would do about anything to protect [Curtis], wouldn't you?

A. To a point. It depends on what you mean.

. . . .

Q. [Y]ou chose not to believe your daughter, stayed with [Curtis], and gave up custody of your children—

A. I didn't give up custody.

Q.—as a result of these allegations?

. . . .

Q. . . . Now, it's true that DCFS removed the children from your presence due to allegations about misconduct in your home.

A. Yes.

Q. And that you chose at that point to stay with [Curtis] instead of working with DCFS through the situation to regain custody of your children; isn't that correct?

A. Yes.

¶ 60 In light of Sister's rebuttal testimony, certain impeaching aspects of Mother's cross-examination testimony, and the manner in which the marijuana use evidence was introduced, we are not persuaded that opening the door to marijuana use had anything more than an "isolated" or "trivial effect" on the jury's perception of Curtis's and Mother's credibility. *See State v. Hales*, 2007 UT 14, ¶ 86, 152 P.3d 321 (citation and internal quotation marks omitted). Accordingly, Curtis has not shown that, but for his counsel's deficient direct examination of Mother, there is a reasonable probability the outcome of his case would have been different.

## CONCLUSION

¶ 61 Because Curtis has not included key pieces of evidence with his rule 23B motion and because the affidavits accompanying his motion fail to allege nonspeculative facts to support his ineffective assistance claim, we deny Curtis's rule 23B motion for remand. We also deny Curtis's ineffective assistance of counsel claim because he has not shown his attorney's failure to introduce evidence was deficient, and any other errors that may have been committed did not result in prejudice.