2025 UT App 39

# THE UTAH COURT OF APPEALS

CEDAR CITY,
Appellee,
*v.*
ASHLEY BRAGET,
Appellant.

Opinion
No. 20230535-CA
Filed March 13, 2025

Fifth District Court, Cedar City Department
The Honorable Matthew L. Bell
No. 221500535

Lyla Mahmoud, Debra M. Nelson, Benjamin Miller,
and Wendy M. Brown, Attorneys for Appellant

Randall K. McUne, Attorney for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and AMY J. OLIVER
concurred.

LUTHY, Judge:

¶1     Cedar City (the City) charged Ashley Braget with two misdemeanors—assault and contributing to the delinquency of a minor. The day before her scheduled bench trial, Braget requested that the trial be held via video conference rather than in person. On the day of trial, Braget connected to the video conference with only an audio connection. The judge, the attorneys, and the City's two witnesses all appeared at the trial in person. The trial proceeded with Braget and her sole witness participating by audio only. At the conclusion of the trial, the court found Braget guilty on both counts.

¶2    Braget appeals, asserting that her constitutional rights to be "present by video" at trial and to confront the witnesses against her via video were violated. Because these claims are unpreserved, she brings them under the plain error and ineffective assistance of counsel exceptions to the preservation requirement. She also asserts that her trial counsel was ineffective for allowing the defense's sole witness to testify without video. Finally, Braget has filed a motion under rule 23B of the Utah Rules of Appellate Procedure, asking for a remand to supplement the record in support of additional claims of ineffective assistance. Braget's claims are unavailing, and she has failed to meet her burden under rule 23B. We therefore deny her rule 23B motion and affirm her convictions.

BACKGROUND

*The Charges, Arraignment, and Pretrial Hearings*

¶3    In April 2021, the City filed charges against Braget in justice court for two Class B misdemeanors stemming from an assault by Braget and her teenage son (Son) against Braget's husband, Son's father (Husband). The matter was set for an arraignment via video conference. On the appointed day, Braget failed to appear, and the court issued a warrant for her arrest. Later that day, Braget filed a request to recall the warrant, and her arraignment was rescheduled, again to be held by video conference. On the indicated later date, Braget again failed to appear, and the court again issued a warrant for her arrest. Braget was subsequently arrested, and her arraignment was held by video conference while she was in custody. Braget entered pleas of not guilty and was appointed a public defender (Counsel) and released from custody. The court set the matter for a pretrial conference—to be held in person.

¶4    The day before the pretrial conference, Braget called the court and said that "she didn't think that she could make it to [c]ourt." Later that day, Counsel asked that the hearing be held by video conference, and the court acceded to this request. The case was then transferred to the district court and proceeded to trial.[1] At a scheduling conference for which Braget was not present, Counsel requested a bench trial, and the district court scheduled the matter for a half-day bench trial. The trial was later continued based on a stipulated motion filed by Counsel; it was rescheduled for January 12, 2023. The day before the rescheduled trial, Counsel filed a stipulated motion to convert the in-person trial "to a virtual [video conference] trial." Although no reason for the request was provided in the motion, Braget states in her primary brief on appeal that the reason for the request was that she did not live in Utah at the time. The court agreed to hold the trial by video conference and to allow Braget to appear virtually.

*The Trial*

¶5    At the appointed time, Braget connected to the trial by phone with no video connection. The court, the attorneys, Husband, and a law enforcement officer witness (Officer) appeared in the courtroom. The court asked Counsel whether the defense was "prepared to go forward." Counsel indicated that she was communicating with Braget by text, and Counsel audibly informed Braget through the video conference that "the judge [was] wanting to know . . . if [Braget] intend[ed] to go forward" with trial that day. Braget replied with a response characterized in the official transcript as "inaudible," and the court took a recess

---

1. "If a justice court has jurisdiction over a criminal action involving a domestic violence offense and the criminal action is set for trial, the prosecuting attorney or the defendant may file a notice of transfer in the justice court to transfer the criminal action from the justice court to the district court." Utah Code § 78A-7-106(7)(a).

"to let [Counsel] communicate with [Braget] with some privacy." After the recess, Counsel informed the court, "[W]e're still planning on going forward."

¶6    The City's first witness was Husband. He testified that one day in March 2021, Braget drove Son to a garage "located in back of [Husband's] shop" where Husband worked. Huband recounted that Braget and Son came into the garage together and were "very angry." He said that Son "started being loud with words" and that when Husband told Son "not to fight," Son began punching him. Husband testified that when Son punched him, Husband "went down because [he] wasn't fighting back" and that after falling to the ground, he could "feel[] that they were kicking" him. Husband stated that he then heard Son tell Braget, "[D]on't touch [Husband.] . . . [I] will take care of it." The prosecutor then showed Husband his witness statement from the day of the incident, wherein he had written that Braget had kicked him twice in the head, and Husband agreed that his witness statement was accurate.

¶7    On cross-examination, Husband testified that while he was on the ground and after Braget had "jumped in," he heard a friend of his (Eyewitness), who was present at the time, say, "Don't do it. Leave him alone." Husband recounted that he then felt "more legs kicking" him. Husband then confirmed that this was when he heard Son tell Braget, "Leave him alone" and "I'll take care of him." Husband stated that he was "face down on the ground" at the time.

¶8    The prosecutor then called Officer, who testified to what he saw when he arrived on the scene after the assault. After Officer's testimony, the City rested. Although the prosecutor had subpoenaed Eyewitness to testify, Eyewitness had not appeared.

¶9    The defense then put on its case. Counsel called Son, who was then age sixteen. Like Braget, Son was attending the trial

virtually with only an audio connection. The court asked Son, "Do you have—can you activate a camera there? Are you calling from a smart phone?" Son initially replied, "Yes, I can," but he then said, "It does not let me. Sorry." The court responded, "We'll . . . deal with it under the circumstances." Son then proceeded to testify without video.

¶10 Son testified that Husband had called him and that the two of them had "started to argue," so Son "decided to skate[board] down there to go and argue with him in person." Son explained that Braget was driving to see Husband at the same time and that when she saw Son skateboarding to Husband's garage, she picked him up and drove him the remainder of the way. Son testified that Braget was still in the car when he entered the garage.

¶11 Son explained that he began arguing with Husband in the garage and that the argument "turn[ed] physical" when he "headbutt[ed] [Husband] or something." Son testified that at that point, Husband "threw [Son] around," they "scuffled on the floor," and then Son "got up and left." Son stated that Braget did not "get[] involved at all" and "never once touched" Husband. When asked, "So does that mean she did not kick him either?" Son responded, "No, nobody got kicked. Nobody got—no adults touched each other. . . . [T]hey never hit each other and nobody should ever be in trouble because of it. It was only me and [Husband] arguing and fighting the entire time."

¶12 On cross-examination, Son volunteered that Eyewitness was also present during the incident, after which Son said,

> [Eyewitness] lied about [Braget] touching [Husband]. She didn't once touch him. She might have pulled me off of him, you know, because we were scuffling, and she told me to "Stop, stop. No, let's go. Get out of here. Go." And I was like, "Okay. I'm done. I'm sorry."

¶13    After Son's testimony, the court asked Counsel whether she intended to call any additional witnesses. Counsel responded by asking Braget if she was "still on." Braget spoke up and asked, "Can you hear me?" Counsel said, "Yeah, I can hear you, but I . . . would recommend resting and not having you testify." Braget then asked for "[o]ne second" because there was "a lot of air force" where she was and she needed to "hide from that." Shortly thereafter, Braget asked, "Hello? Can you hear me better now?" Counsel responded in the affirmative, and the court took a recess to allow Counsel and Braget to speak privately about whether to have Braget testify. After the recess, Counsel reported that Braget would not be testifying and asked the court to mute Braget. Counsel then briefly re-called Son to answer some clarifying questions and then rested.

¶14    Following closing arguments, the court found Braget guilty on both counts, explaining that it found Husband's account of Braget participating in the assault to be credible. Braget now appeals.

ISSUES AND STANDARDS OF REVIEW

¶15    On appeal, Braget asserts two claims of plain error. She contends that the district court plainly erred by violating her right to be present at trial when it "made no inquiry into the voluntariness of her video absence" from the virtual trial. She also claims that the district court plainly erred by "fail[ing] to receive an explicit waiver" of her confrontation rights before "it allowed the prosecution's witnesses to testify." Because claims of plain error involve no lower court ruling, we decide them in the first instance as a matter of law. *See State v. Corry*, 2024 UT App 142, ¶ 17, 558 P.3d 128.

¶16    Next, Braget asserts three ineffective assistance of counsel claims. Two of these claims correspond with her claims of plain

error. Specifically, she contends that Counsel provided ineffective assistance by not objecting when the court proceeded with trial in Braget's "video absence" and when the court "allowed the witnesses to testify when [Braget] and the witnesses could not see each other." Braget also claims that Counsel was "ineffective in allowing [Son] to testify virtually without video." "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Elkface*, 2023 UT App 24, ¶ 7, 527 P.3d 820 (cleaned up), *cert. denied*, 534 P.3d 752 (Utah 2023).

¶17    In addition to her immediate claims on appeal, Braget has filed a motion under rule 23B of the Utah Rules of Appellate Procedure, asking that we remand this case for supplementation of the record in support of additional ineffective assistance claims. "A remand under rule 23B will only be granted upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *State v. Lee*, 2014 UT App 4, ¶ 5, 318 P.3d 1164 (cleaned up).

ANALYSIS

I. Plain Error

¶18    Braget raises two claims of plain error, specifically, that the district court plainly erred by (1) failing "to discuss with [Braget] on the record whether she was knowingly waiving her right to be present" and (2) failing "to receive an explicit waiver of [Braget's] right to confrontation." "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more

favorable outcome for the appellant." *State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276 (cleaned up). Braget's plain error claims fail because, at a minimum, the claimed errors would not have been obvious to the district court.

¶19 "The Due Process Clause [of the Fourteenth Amendment together with] the Confrontation Clause of the Sixth Amendment, as applied to the States via the Fourteenth Amendment, both guarantee to a criminal defendant . . . the right to be present at all stages of the trial where his [or her] absence might frustrate the fairness of the proceedings." *Tennessee v. Lane*, 541 U.S. 509, 523 (2004) (cleaned up). The Confrontation Clause also "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 844 (1990) (cleaned up).

¶20 Braget does not dispute that she knowingly and voluntarily waived her right to be physically present at the trial and her right to confront the witnesses in person when she asked to appear virtually at trial. She asserts, however, that she nevertheless retained a right to a visual connection to the trial and a right to confront the witnesses through that video connection. For purposes of our analysis, we assume that Braget retained such rights. But those rights were also subject to waiver. *See United States v. Mezzanatto*, 513 U.S. 196, 201 (1995) ("A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution."); *Peretz v. United States*, 501 U.S. 923, 936 (1991) ("The most basic rights of criminal defendants are . . . subject to waiver."). And it would not have been obvious to the district court that Braget had not waived those rights.

¶21 After learning that Braget lacked a video connection to the trial, the court asked Counsel whether the defense was "prepared to go forward." Then, before receiving an answer, it took a recess to allow Counsel and Braget to "communicate with . . . some

privacy" about that question. After the recess, Counsel informed the court, "[W]e're still planning on going forward," apparently waiving on Braget's behalf the right to a video connection and the right to personally confront the witnesses through that video connection.

¶22 Braget contends, however, that Counsel's representation that Braget wished to proceed with trial was insufficient to establish Braget's knowing and intentional waiver of her presumed rights to be visually present and to personally confront the witnesses via video. Braget asserts that these presumed rights could not be knowingly and voluntarily waived unless the court "discuss[ed] with [Braget individually and] on the record whether she was knowingly waiving" them. But Utah law on this point is far from settled in Braget's favor.

¶23 Our opinion in *State v. Robertson*, 2018 UT App 91, 427 P.3d 361, is instructive in this regard. In *Robertson*, the defendant's attorney informed the district court that the defense intended to conduct jury selection in chambers without the defendant present. *Id.* ¶ 31. Defense counsel said that he and the defendant had "discussed that, and the reasons for that, and . . . that [the defendant was] in agreement with that procedure." *Id.* (cleaned up). The court informed the defendant that he had "the right to be present at all critical stages" of the proceeding and that "jury selection is one of those critical stages." *Id.* (cleaned up). It then asked the defendant if he was waiving his "right to be present during jury selection." *Id.* (cleaned up). The defendant confirmed that he was. *Id.* "Later, in the middle of the voir dire process," the court learned that the defendant had expressed a desire to "go back to the jail" instead of waiting at the courthouse. *Id.* ¶ 32 (cleaned up). The court brought the defendant into the courtroom, explained that it was aware of his request, and confirmed with the defendant that he wanted to go back to the jail, after which the defendant was taken to the jail. *Id.*

¶24 "Despite [the court's] two separate attempts to expressly confirm that [the defendant] truly wished to waive his right to be present at voir dire," *id.* ¶ 33, the defendant argued on appeal that the district court had committed plain error by conducting voir dire without him there, *see id.* ¶¶ 18, 33. We observed that in making this argument, the defendant was "encourag[ing] us to treat waiver of the right to be present at voir dire no differently than waiver of the right to counsel," *id.* ¶ 34, which can generally be elicited only "after penetrating questioning" that makes a defendant "aware of the dangers and disadvantages of self-representation," *State v. Frampton*, 737 P.2d 183, 187 (Utah 1987) (cleaned up); *see also id.* at 187 n.12 (endorsing a specific sixteen-question colloquy for use in eliciting a waiver of the right to counsel). We then characterized the defendant's argument as "essentially [a contention] that waiver of any constitutional right attached to criminal trials requires a detailed colloquy to ensure that the defendant fully under[stands] the nature of his [or her] right and the dangers associated with the wavier." *Robertson*, 2018 UT App 91, ¶ 35 (cleaned up).

¶25 After so characterizing the defendant's argument, we observed that there are "constitutional rights that we regularly allow criminal defendants to waive without such a searching inquiry." *Id.* Specifically, we noted that "we do not require such a colloquy when a criminal defendant waives his [or her] right to testify." *Id.* (citing *State v. Brooks*, 833 P.2d 362, 365 (Utah Ct. App. 1992) ("We hold that the trial court bears no affirmative duty sua sponte to engage in an on-the-record colloquy with [a] defendant at the time of trial to ensure a valid waiver of the right to testify.")). We also observed that "no detailed discussion is typically held on the record when a defendant waives his [or her] rights under the Confrontation Clause." *Id.* (citing *State v. King*, 2010 UT App 396, ¶ 51 n.13, 248 P.3d 984 ("[A] defendant may waive his [or her] constitutional right of confrontation by electing to forgo cross-examination of a witness.")). Then we noted that

the defendant had "direct[ed] us to no Utah case law—and [that] we [were aware of] none—that explains whether waiver of the constitutional right to be present at voir dire is more akin to waiver of the right to testify or confront witnesses or, as [the defendant] would have [had] us conclude, waiver of the right to counsel." *Id.* "Given the dearth of relevant authority," we concluded, "it would not have been obvious to the trial court that anything more was required of it." *Id.*

¶26 Braget is in the same boat as the *Robertson* defendant. She too essentially contends that waiver of any constitutional right attached to a criminal trial requires a detailed colloquy to ensure that the defendant fully understands the nature of the right and the dangers associated with the waiver. Yet she too has directed us to no Utah case law—and we have found none—that holds that waiver of the presumed right to a visual connection to a virtual trial is more akin to waiver of the right to counsel than waiver of the right to testify. And *Robertson* itself suggests that "no detailed discussion . . . on the record" is needed to establish a waiver of Confrontation Clause rights. *See id.*

¶27 We acknowledge that the trial court in *Robertson* initially engaged in a more in-depth colloquy with the defendant there regarding the right he was waiving than the district court did with Braget here. But we have identified no case law stating that more was required of the district court than to receive from Counsel—following an opportunity to consult privately with Braget—an affirmation that Braget wished to proceed with trial despite her lack of a video connection. Given the absence of controlling case law mandating the kind of searching colloquy that Braget asserts was required, "we cannot agree that the trial court committed any error, let alone an obvious one." *Id.*; *see also State v. Roman*, 2015 UT App 183, ¶ 9, 356 P.3d 185 ("To establish that [an] error should have been obvious to the trial court, the appellant must show that the law governing the error was clear at the time the alleged error was made." (cleaned up)).

¶28 In support of a contrary conclusion, Braget points to an Administrative Order for Court Operations During Pandemic dated December 31, 2020 (the Pandemic Order).[2] The Pandemic Order was promulgated by the Utah Supreme Court and Utah Judicial Council during the COVID-19 pandemic and modified the Utah Rules of Criminal Procedure by, among other things, adding the following provision to rule 17(a):

> In all cases tried to the bench, a defendant may waive the right to appear in person at trial and consent to appear through video conferencing if the defendant has an effective opportunity to participate, *which includes the ability to view trial participants and to meaningfully interact with counsel of record in real time*. "Trial participants" is defined to include the judge and testifying witnesses. *The defendant's waiver and consent must be on the record and the court must make findings that the waiver and consent are voluntary.*

(Emphasis added.) The Pandemic Order was "terminated" by the Utah Supreme Court and Utah Judicial Council on August 26, 2022, by an Administrative Order Terminating COVID-19-Related Orders, which repealed "[a]ll previously imposed COVID-19-related . . . rule modifications."[3]

---

2. *See* Administrative Order for Court Operations During Pandemic, Utah Supreme Court and Utah Judicial Council (Dec. 31, 2020), https://www.utcourts.gov/en/about/administration/alerts/covid.html [https://perma.cc/RR4S-H9FR].

3. *See* Administrative Order Terminating COVID-19-Related Orders, Utah Supreme Court and Utah Judicial Council (Aug. 26, 2022), https://www.utcourts.gov/en/about/administration/alerts.html [https://perma.cc/9ZCM-EBML].

¶29 Braget acknowledges that the Pandemic Order "was not in effect at the time of [her] trial." But she argues that because the Pandemic Order was "in effect for nearly two years," "it should have been obvious to the trial court that [Braget's] presence by phone without video at the very least required additional inquiry." By so arguing, Braget essentially suggests that it should have been obvious to the district court that the Pandemic Order articulated constitutional requirements for establishing a defendant's waiver of a visual connection to a virtual bench trial. We disagree. By its terms, the Pandemic Order did not purport to be a pronouncement of constitutionally mandated standards in ordinary circumstances. Rather, it was promulgated on an "expedited basis" during a "declared . . . state of emergency" in order "[t]o bring uniformity to the operation of the courts." Its termination without supreme court comment regarding any constitutional necessity to continue following its various provisions renders it at best persuasive authority, not settled law, on the constitutional issue here.

¶30 Braget also points to *State v. Gunter*, 2013 UT App 140, 304 P.3d 866, to support her argument that a more fulsome colloquy between her and the district court was required to show her waiver of the presumed rights to a video connection and to confront the witnesses via that connection. In *Gunter*, the defendant "did not appear for trial," and the trial court concluded that the defendant "had voluntarily absented himself," even though defense counsel had not "informed the trial court whether he knew where [the defendant] was" or "otherwise addressed [the defendant's] absence on the record." *Id.* ¶ 8 (cleaned up). On appeal, we explained that "absent any direct evidence explaining [a] defendant's whereabouts, [a] trial court [should] ordinarily postpone the proceedings to permit both the prosecution and defense counsel to seek additional information." *Id.* ¶ 25 (cleaned up). We then said that "where there is no explanation for the defendant's absence, resolving the question of [whether the

defendant's absence is voluntary] requires some form of inquiry by the trial court." *Id.* (cleaned up). We then held that the trial court "erred by failing to make an adequate inquiry into whether [the defendant] was voluntarily absent before proceeding with trial in absentia." *Id.* ¶ 26.

¶31   Braget's reliance on *Gunter* is misplaced. Unlike *Gunter*, this is not a case where the defendant was wholly absent from trial and the district court found a waiver of the right to be present without any inquiry or evidence regarding the defendant's whereabouts. Braget actually appeared at trial—albeit by audio only—and the court did not proceed until Braget and Counsel had conferred and affirmed to the court that Braget wished to proceed. *Gunter* does not provide a basis for requiring anything more.

¶32   For the foregoing reasons, Braget's plain error claims fail.

## II. Ineffective Assistance of Counsel

¶33   Braget also asserts that she received ineffective assistance of counsel (1) when Counsel "allowed her trial to go forward while she was present by voice only without video," (2) when Counsel "failed to object while the prosecution's witnesses testified in violation of [Braget's] confrontation rights," and (3) when Counsel "allowed [Son] to testify remotely without video." These claims are closely related, and we address them together.

¶34   To establish ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense" by "depriv[ing] the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [a defendant's] claim under either prong." *Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182.

¶35 To demonstrate deficient performance, the defendant "must convince us that, despite the fact that counsel is strongly presumed to have rendered adequate assistance, counsel's acts or omissions nevertheless fell outside the wide range of professionally competent assistance." *State v. Lopez-Gonzalez*, 2020 UT App 15, ¶ 19, 459 P.3d 1049 (cleaned up). The defendant must therefore "show that his [or her] counsel's performance fell below an objective standard of reasonableness." *Id.* (cleaned up). And when assessing objective reasonability, we "reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *State v. Carter*, 2023 UT 18, ¶ 45, 535 P.3d 819 (cleaned up). To satisfy the prejudice prong of an ineffective assistance claim, "[t]he burden is on the defendant to demonstrate a reasonable probability that the outcome of his or her case would have been different absent counsel's error." *State v. Scott*, 2020 UT 13, ¶ 43, 462 P.3d 350.

¶36 Additionally, under both prongs of an ineffective assistance claim, "[a]n absence of evidence matters." *State v. Rivera*, 2022 UT App 44, ¶ 43, 509 P.3d 257. "On deficient performance, it should go without saying that the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* (cleaned up). "So too with prejudice. Speculation is not a substitute for proof of prejudice, and proof of prejudice may not be based purely upon a speculative matter." *Id.* (cleaned up). In short, "proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *Id.* (cleaned up).

A. Assistance with Video and Advice to Son

¶37 Braget argues specifically that Counsel should have "assisted her with the video function" on her phone, "informed [Son] before trial that he needed to appear by video," and

"insisted that [Son] have time to access a device that would allow him to testify by video" when he called in by phone. But the record does not demonstrate that the problem with the video function of Braget's phone could have been corrected with Counsel's assistance, that Counsel did not instruct Son to appear by video, or that Son could have accessed a video-capable device during the span of a reasonable delay. Because ineffective assistance must be a demonstrable reality, these gaps in the record render Braget's arguments in this regard unavailing.

B.      Request for a Continuance

¶38    We are also not convinced that—as Braget further insists—Counsel was required to request a continuance of the trial. Eyewitness was present during the assault. He had apparently reported that Braget "touch[ed]" Husband during the incident, and he had been subpoenaed to testify. But he did not appear at trial. Counsel could have reasonably concluded that proceeding in the absence of the sole witness who was willing and able to corroborate Husband's account would be more helpful to Braget's defense than insisting on a continuance that might allow Braget and Son to appear in person or via video at a rescheduled trial.

¶39    The reasonableness of Counsel's course in this regard is enhanced by the fact that over the course of six scheduled appearances prior to trial, Braget had failed three times to appear at all; her single in-person appearance had occurred only after a warrant for her arrest had been executed; she had requested and been given one continuance already; and when she appeared for her virtual trial with only an audio connection, she did so sufficiently close to "a lot of air force" to make it difficult for her to hear and to be heard. Given that history, Counsel could have reasonably questioned whether Braget would appear at all or with an appropriate video connection even if another continuance was granted.

C.      Request for an Additional Inquiry

¶40    Finally, Braget argues that Counsel should have at least "request[ed] that the trial court make an inquiry into the voluntariness of [Braget's] presence without video." But there is no indication in the record that if the court had conducted a more fulsome colloquy into the voluntariness of Braget's presence without video, Braget would have requested a continuance so that she could later appear in person or via video. Thus, whether any prejudice resulted from Counsel's asserted deficient performance in this regard is a purely speculative matter, and Braget's argument is, again, unavailing.[4]

¶41    For the foregoing reasons, Braget's ineffective assistance of counsel claims also fail.

### III. Rule 23B Motion

¶42    Finally, Braget moves under rule 23B of the Utah Rules of Appellate Procedure for a remand to supplement the record with evidence in support of additional claims of ineffective assistance. We conclude, however, that she has failed to meet her burden under rule 23B.

---

4. Braget argues that Counsel's performance was deficient for the additional reason that Counsel never "inform[ed] [Braget] that she had the right to appear by video" and "never informed [Braget] of [her confrontation] rights." But the current record contains no information about the conversations between Braget and Counsel. Thus, arguments based on what Counsel did or did not say to Braget are speculative and unavailing on the record before us. Braget's rule 23B motion, however, includes allegations regarding such conversations, and we take up Braget's arguments based on those conversations in section III.

¶43    The purpose of a rule 23B motion "is to develop new evidence in the record, without which a defendant cannot bring his [or her] ineffective assistance of counsel claim on appeal." *State v. Griffin*, 2015 UT 18, ¶ 18, 441 P.3d 1166. To obtain a remand under this rule, "a defendant must present the court with the evidence he [or she] intends to present on remand and explain how that evidence supports both prongs of the ineffective assistance of counsel test." *State v. Suhail*, 2023 UT App 15, ¶ 126, 525 P.3d 550 (cleaned up), *cert. denied*, 531 P.3d 730 (Utah 2023). "If the motion cannot meet the test for ineffective assistance of counsel, then there is no reason to remand the case." *State v. Samples*, 2022 UT App 125, ¶ 57, 521 P.3d 526 (cleaned up), *cert. denied*, 525 P.3d 1279 (Utah 2023).

¶44    In her rule 23B motion, Braget seeks to supplement the record in support of a claim that Counsel provided ineffective assistance by failing "to advise [Braget] of the rights implicated by calling into her virtual trial without video" and by failing "to discuss with [Braget] the ways to protect these rights during trial."[5] In support of this claim, Braget provides her own declaration, in which she states, in relevant part, as follows:

- "I spoke privately with [Counsel], . . . who told me we had to go forward with the trial that morning and could not delay. She told me that participating in the trial by phone

---

5. Braget's motion also seeks to supplement the record in support of a claim that Counsel rendered ineffective assistance by failing "to ensure [Braget] was able to attend the trial by two-way video." But the allegations in the motion do nothing to demonstrate that Counsel could have ensured Braget's attendance via video without requesting a continuance. Thus, under the same analysis articulated above, *see supra* ¶¶ 38–41, Braget has failed to meet her rule 23B burden on that claim.

without video was my only option. She did not advise me to participate in the trial by video instead of by phone."

- "In this private conversation, [Counsel] also did not advise me of any of my constitutional rights that might be affected by attending the [virtual] trial without video."

- "Throughout my trial, I had difficulty hearing the individuals speaking and had difficulty following along with the trial process."

- "I had difficulty communicating with [Counsel]. When I had a question, I did not feel I could easily have private communication with [Counsel]."

¶45 Braget also provides an affidavit from her appellate counsel that recounts what she learned when she contacted Counsel and asked for "more [information] about why [Braget] was present by phone without video for her [virtual] trial":

- "[Counsel] responded that [Braget] told her she did not have the funds to travel to Utah for her trial, and that having [Braget] appear by [video conference] was the solution."

- "[Counsel] told me that because [the district court that heard Braget's case] allow[s] parties to participate in hearings by phone or by computer, she did not tell [Braget] to use a device with video capability to attend her [virtual] trial."

¶46 Even if we assume that Braget has alleged sufficient facts to support a determination that Counsel performed deficiently by not informing her of the purported "rights implicated by calling into her virtual trial without video" and not discussing with her "the ways to protect [those purported] rights during trial," Braget has not alleged sufficient facts to demonstrate that she was

prejudiced by the deficient performance. Specifically, even though Braget provides evidence that Counsel did not advise her to connect to the trial by video, Braget does not allege that if she had been so advised she could and would have connected with video on the day of trial. Therefore, the notion that she was prejudiced by Counsel's alleged failure is speculative.

¶47 Similarly, although Braget declares that Counsel did not "advise [her] of any of her constitutional rights that might be affected by attending the [virtual] trial without video" and, instead, told her that participating without video was her "only option," Braget does not allege that if Counsel had advised her of those rights and told her she could seek a continuance, she would have actually sought a continuance. Thus, again, any prejudice from the alleged failures remains speculative.

¶48 Likewise, Braget declares that she "had difficulty hearing" the trial, "difficulty following along with the trial process," and "difficulty communicating with [Counsel]" and that she "did not feel [she] could easily have private communication with [Counsel]." But having now had an opportunity to review the trial transcript and to consult with Counsel about what transpired during trial,[6] Braget does not explain what she missed that made a difference, what questions she would have asked, what input she would have given, or how the trial would have otherwise unfolded differently if she had been able to hear, follow along, and communicate with Counsel more fully. Hence, any resulting prejudice is again speculative.

¶49 Because "proof of prejudice [due to a defense attorney's deficient performance] must be a demonstrable reality, not mere

6. We infer from Counsel's continued representation of Braget through sentencing and Counsel's willingness to speak with Braget's appellate counsel that Braget has had an opportunity to consult with Counsel regarding what transpired during trial.

speculation," *State v. Curtis*, 2013 UT App 287, ¶ 54, 317 P.3d 968 (cleaned up), Braget has failed to meet her burden to merit a remand under rule 23B.

CONCLUSION

¶50 Braget has not shown that the district court's alleged errors should have been obvious to the district court, and her plain error claims therefore fail. As to each of her claims of ineffective assistance of counsel, Braget has failed to demonstrate either Counsel's deficient performance or prejudice resulting from the asserted deficient performance; thus, Braget's ineffective assistance of counsel claims fail. Finally, under the facts alleged in Braget's rule 23B motion, Braget would not be able to establish the prejudice prong of the ineffective assistance claim for which she seeks a remand; hence, she has not met her rule 23B burden. Accordingly, we deny Braget's rule 23B motion and affirm her convictions.

———————